156 So.2d 68 (1963)
Kathryn D. McWATERS et al.
v.
Jerome H. TURNAGE, Sr., et al.
No. 5901.
Court of Appeal of Louisiana, First Circuit.
July 1, 1963.
Rehearing Denied September 26, 1963.
Certiorari Refused November 12, 1963.
*69 Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, by Robert J. Vandaworker, Baton Rouge, Pierson & Pierson, Ponchatoula, for appellants.
Pittman & Matheny by Tom H. Mathenry, Hammond, for appellees.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
LANDRY, Judge.
The appeal in this case is from a judgment of the trial court predicated upon a jury verdict in favor of plaintiffs, Kathryn D. McWaters and her husband, Marcus V. McWaters, individually and as administrator of the estate of his minor daughter, Karyn McWaters, awarding damages for personal injuries and resultant medical expense sustained and incurred by Mrs. McWaters and Karyn in an intersectional automobile accident which occurred in the City of Hammond, Louisiana, on April 9, 1960, at approximately 5:30 P.M.
Judgment was rendered below, in accordance with the jury verdict, in favor of Mrs. McWaters in the sum of $10,000.00 and in favor of plaintiff, Marcus V. McWaters, individually, in the amount of $1,437.00, and as administrator of the *70 estate of the Minor, Karyn McWaters, in the aggregate of $5,213.00, in solido, against defendants, Jerome H. Turnage, Sr., individually and as administrator of the estate of his minor, unemancipated son, Jerome H. Turnage, Jr., and Southern Farm Bureau Casualty Company, liability insurer of the Turnage vehicle, the liability of said insurer being restricted to its policy limits. From said adverse judgments defendants have appealed.
The accident occurred at the intersection of North Magnolia Street, which runs in a northerly-southerly direction, and West Michigan Street, which courses from east to west. Both thoroughfares are two-lane, concrete paved avenues of travel twenty feet in width and intersect at right angles. The intersection in question is uncontrolled by either stop sign, municipal ordinance or traffic light and is therefore subject to the statutory rule according right of way to the motorist approaching from the right when vehicles enter the intersection at approximately the same time.
Plaintiff, Mrs. Kathryn D. McWaters, accompanied by her 9 year old daughter, Karyn, was driving the family 1959 Vauxhall Sedan westerly along West Michigan Street while, simultaneously, Jerome H. Turnage, Jr., 18 years of age, was proceeding alone in his father's 1956 Plymouth sedan southerly on North Magnolia Street. The accident occurred when the right front fender of the Turnage vehicle struck the right rear wheel of the Vauxhall the impact taking place in the approximate center of the intersection.
Plaintiffs maintain the accident resulted solely from the negligence of young Turnage in driving in excess of the lawful speed limit of 25 miles per hour, failing to see the Vauxhall preempt the intersection and failing to yield the right of way after the intersection had been lawfully preempted by plaintiff's vehicle.
Defendants contend Turnage was free of negligence and the accident resulted solely from the negligence of Mrs. McWaters in failing to stop at the intersection, failing to see the approaching Plymouth and failing to yield the right of way to defendant's vehicle which was approaching from her right. Alternatively, defendants argue Mrs. McWaters was contributorily negligent in the respects indicated.
In their specifications of error defendants contend the lower court erred in (1) finding for plaintiffs inasmuch as the evidence reveals the Turnage youth was free of negligence; (2) failing to reject the claims of plaintiffs, Mr. and Mrs. McWaters, considering Mrs. McWaters was shown to be guilty of contributory negligence; (3) awarding excessive damages to both Mrs. McWaters and the child, Karyn; and (4) awarding excessive special damages.
The Turnage lad testified that immediately prior to the accident he was returning from the campus of Southeastern Louisiana College where he had been playing tennis with a friend. He dropped his friend off at the latter's residence two blocks north of the scene of the accident, and proceeded southerly along Magnolia Street in the right southbound lane of travel at a speed of approximately 35 miles per hour. (Plaintiffs maintain Turnage's admitted speed of 35 miles per hour is in excess of the 25 mile maximum in force in the City of Hammond by virtue of municipal ordinance. Although the ordinance was not introduced in evidence and no other evidence was offered to prove the speed limit, defendants allege Mrs. McWaters was in violation of the same ordinance. Under the circumstances, defendants' allegation regarding speed constitutes an admission of the legal speed limit as an established fact.) According to young Turnage, at a point determined by subsequent measurement to be 97 feet from the intersection and which he estimated to be one-quarter of a block, he observed Mrs. McWaters approximately 50 feet east of the intersection proceeding westerly on Michigan Street at a speed *71 equal to or greater than his own. Realizing the imminence of a collision he applied his brakes and at a distance estimated at between 3 and 8 feet north of the intersection he released his brakes and attempted to pull to his left to pass behind the McWaters vehicle. His efforts were in vain, however, inasmuch as the right front fender of the Plymouth struck the right rear fender of the Vauxhall, the collision occurring on the centerline of the intersection or slightly east thereof in the north or westbound lane of travel for vehicles proceeding along Michigan Street. In his deposition, however, he stated he did not see the Vauxhall until he was about 25 feet from the intersection at which time Mrs. McWaters had already entered the junction.
Although the foregoing inconsistency exists between the testimony of young Turnage given at the trial and that contained in his previous deposition regarding the point of impact and his distance from the intersection upon observing the Vauxhall, his testimony concerning the application of brakes is confirmed by that of Dr. William H. Rigdon who lived nearby and was attracted to the scene by the noise of plaintiff's brakes and the sound of the impact.
In essence Dr. Rigdon stated he observed skid marks in the right southbound lane of Magnolia at least 20 feet in length commencing approximately 15 to 16 feet north of and extending into the intersection, the length thereof being determined purely by estimation.
There also appears of record a report of the city police officer who investigated the accident. The report states the Turnage vehicle left skid marks 25 feet in length preceding the point of impact but does not state at what point they began and ended.
Plaintiff, Mrs. McWaters, testified she picked up her daughter, Karyn, 9 years of age, at a recreational center shortly before the accident and was on her way home. She turned onto Michigan Street one block east of Magnolia. When she reached the intersection she either slowed her vehicle or stoppedshe was not certain she came to a complete stop but was positive she at least slowed to such extent it was necessary that she shift gears before proceeding into the intersection. She looked to her right, then to her left, then right again and, observing no vehicle in sight, proceeded into the intersection at a speed estimated at 5 miles per hour. Mrs. McWaters conceded that at the point from which she looked her visibility was unimpeded to a distance of from ¼ to ¾ of a block along Magnolia Street to the north. According to Mrs. McWaters her vehicle was beyond the center of the intersection when it was struck by the Turnage Plymouth which she had not seen and did not see at all prior to the collision.
Plaintiffs maintain (somewhat inconsistently in our judgment) Mrs. McWaters had almost negotiated the intersection and was leaving it when struck and also that young Turnage was traveling in the left or wrong traffic lane. Obviously such was not the case because, granting both said conditions, the collision would not have occurredthe Turnage vehicle would have passed to the rear of the Vauxhall without incident. In addition the testimony of the disinterested witness, Dr. Rigdon, placed the skid marks made by defendant's vehicle in the right southbound lane of Magnolia Street.
The driver approaching an uncontrolled intersection from the right forfeits his statutory right of way by traveling at an unlawful rate of speed. LSA-R.S. 32:237, subd. A; State Farm Mutual Automobile Insurance Company v. United States Fidelity & Guaranty Company, La.App., 111 So. 2d 175.
From the testimony of record we conclude young Turnage was guilty of negligence proximately causing the accident inasmuch as he was traveling at an excessive rate of speed. Accepting as true, his testimony to the effect he realized a collision *72 was imminent when the Vauxhall was fifty feet distant from the intersection, had Turnage been traveling within the lawful speed limit of 25 miles per hour he would have had ample time to stop his vehicle and avoid a collision.
The negligence of Mrs. McWaters is patent from her own testimony. She stated unequivocally she stopped near the intersection, looked to the right, then left, then right again and seeing no vehicles approaching from either direction, shifted gears and proceeded into the intersection. From where she stopped she had unobstructed visibility extending from one-fourth to three-fourths of a block to her rightthe direction from which Turnage was approaching.
Mrs. McWaters' testimony regarding visibility to the north is corroborated by that of Anthony J. Zabbia, a Civil Engineer and Surveyor, who by actual measurement determined that from a point 15 feet east of the east edge of Magnolia Street a driver on Michigan Street had unobstructed vision as far north as the next intersection (a distance of 360 feet) plus an additional half block or a total distance of one and one-half blocks. His testimony further shows that from a point 30 feet east of the east edge of Magnolia a motorist on Michigan can see one-half block north on Magnolia and from the point where an automobile actually commences entry into the intersection the driver can see as far as two blocks to the north.
Predicated on the testimony of Mrs. McWaters to the effect she stopped at a point from which she could see from one-half to three-quarters of a block to her right, esteemed counsel for appellees maintains she did not see the Turnage vehicle when she looked because it was traveling at such great speed it was not within sight at that time. The argument is purely speculative and presumptive considering there is not one iota of evidence to substantiate the conclusion. Turnage admitted he was proceeding at approximately 35 miles per hour and there is no evidence in the record either by way of testimony or physical evidence to establish he was traveling at such speed as would have placed him out of sight at the time Mrs. McWaters looked before entering the intersection.
It is apparent that although Mrs. McWaters looked she did not see what she should have seena car approaching from her right at such proximity to the intersection she was obligated to yield the right of way to the other motoristor at least within such distance of the intersection and traveling at such speed as to make her entry into the intersection patently and obviously dangerous under the circumstances. The fact that young Turnage forfeited his right of way by driving at an excessive rate of speed would not have justified Mrs. McWaters, had she seen the Plymouth, in proceeding into the intersection on the assumption she thereby acquired the right of way by prior entry. The fact that a motorist may forfeit his right of way due to excessive speed does not necessarily confer right of way upon the vehicle approaching from the left. A motorist must at all times drive with reasonable care under attending circumstances. The intent of the applicable statute cannot be reasonably construed as encouraging motorists to drive directly and boldly into the path of a speeding automobile irrespective of possible consequences. We believe it may be safely and accurately assumed that if Mrs. McWaters had seen what she should have seen she would have stopped her slowly moving vehicle in time to permit the Turnage vehicle to negotiate the intersection.
The driver of an automobile approaching or entering an intersection is held to have seen what he should have seen upon the exercise of reasonable caution. Camp v. Wheeling Pipeline Company, La. App., 76 So.2d 106; Evans v. Walker, La. App., 111 So.2d 885. To look and not see is the equivalent of not looking at all. A motorist who looks before entering an intersection but does not see an approaching *73 vehicle within his range of vision is not thereby exonerated from negligence because the driver of an automobile is charged with having seen what he could and should have seen. Mentel v. Boston Insurance Co., La.App., 144 So.2d 441.
An operator of a motor vehicle at an intersection uncontrolled by stop sign, or automatic semaphore light has a greater duty of observing the presence of opposing traffic and taking action to prevent an accident than the corresponding duty of observation required of drivers at an intersection controlled by stop signs or automatic signal lights. Mentel v. Boston Insurance Co., supra.
Learned counsel for appellees maintains Mrs. McWaters preempted the intersection inasmuch as the evidence shows her vehicle entered ahead of that of Turnage. While the record conclusively establishes the Vauxhall did in fact precede the Plymouth into the intersection this circumstance did not of itself confer upon Mrs. McWaters the superior right to proceed and under no circumstances would it justify her entering the intersection without looking. Prior entry does not relieve a motorist of the duty of maintaining a proper lookout. Browne v. Hall, La.App., 70 So.2d 199. Moreover, preemption of an intersection can only be accomplished when the vehicle on the inferior thoroughfare enters at a time when there is reasonable opportunity to clear the intersection without obstructing the passage of oncoming vehicles proceeding lawfully on the favored street. A driver may not blindly enter an intersection in the path of favored oncoming traffic. Gautreaux v. Southern Farm Bureau Casualty Insurance Company, La.App., 83 So.2d 667; Sonnier v. United States Fidelity & Guaranty Company, La.App., 79 So.2d 635.
Considering the record before us we conclude Mrs. McWaters entered the intersection at a time when the oncoming Plymouth was so near and traveling at such speed it was manifestly unsafe for her to proceed. Had Mrs. McWaters seen the Turnage vehicle (which she should have seen and is legally charged with having seen) she would most certainly have realized it was dangerous for her to proceed across its path. Her failure to see the opposing vehicle was a proximate cause of the accident and bars her recovery herein as well as the individual claim of her husband, Marcus V. McWaters, for medical expense incurred in the treatment of his wife's personal injuries.
The claim of plaintiff, Marcus V. McWaters, as administrator of the estate of his minor daughter, Karyn, is not, however, barred by the contributory negligence of Mrs. McWaters inasmuch as the child was a guest passenger in an automobile being driven by her mother.
The sole remaining issue before us, therefore, is whether the award of damages to said minor in the sum of $5,213.00 was excessive as contended by astute counsel for appellants.
Immediately following the accident little Karyn emerged from the overturned Vauxhall unassisted. She sustained a bump on her forehead, a small cut on one knee in which some broken glass lodged, a lacerated elbow, a few superficial scratches on her face and relatively minor bruises. She was never hospitalized. According to one Felix Laiche who arrived at the scene immediately following the accident, Karyn appeared to be in "very fine condition" but shaken and crying because of concern for the condition of her mother who was more seriously injured. James C. Steedley, a friend of the McWaters family, arrived at the scene soon after the accident and found the child hysterical and extremely disturbed over the condition of her mother whom she believed to have been killed although obviously Mrs. McWaters was very much alive in that she was speaking. Laiche denied the child was hysterical but conceded she was crying and upset.
*74 Following the accident Karyn was taken to the nearby Steedley home where she remained in bed approximately three hours. During this time her lacerated knee was cleansed of small glass particles, merthiolate was applied to her scratches to combat infection and an ice bag placed on her head to relieve her headache. According to Steedley the child remained hysterical until her father came to get her. There is no evidence any of her wounds required suturing although a statement of Dr. Clifton G. Aycock, introduced in evidence indicated he saw the child the day of the accident. Other than the aforesaid statement for medical services, the record is barren of evidence the child received professional medical attention. Dr. Aycock was not called as a witness at the trial.
Karyn testified she is nervous since the accident and extremely so when approaching an intersection in an automobile, particularly when her mother is driving. In this respect, her testimony is corroborated by that of both her mother and father.
Dr. William Sorum, a psychiatrist who examined Karyn in May, 1961, testified the child apparently developed a fear of automobiles, especially when riding with her mother. Although he found the child afflicted with an anxiety complex regarding automobiles he did not consider it serious. In his own words relative to her anxiety, he stated: "There seemed to be a little bit at the time but it wasn't a major degree. I wasn't impressed by it. She didn't have a serious injury in the accident." Although counsel for appellees maintains the child is permanently afflicted with a severe anxiety complex due to the accident, the record does not substantiate the claim.
Learned counsel for appellees has cited numerous cases in support of the contention the award of $5,213.00 in favor of the child was not excessive and should be affirmed. We have examined the cited authorities and find them clearly distinguishable from the case at bar. For example an award of $5,000.00 was granted in Windbigler v. State, La.App., 81 So.2d 63, for injuries consisting of cerebral concussion, laceration resulting in a scar, and continued headaches and fainting spells; in Matherne v. Crowther, La.App., 96 So.2d 89, a high school boy was awarded damages in the sum of $12,500.00 for injuries consisting of cuts and lacerations of the face and head leaving minor disfiguring scars, severe laceration of the left knee requiring hospitalization for 5 days and use of crutches for four weeks with resultant complications and residual disability; in Billiot v. Noble Drilling Corporation, La.App., 102 So.2d 569, a girl was awarded $1,500.00 for injuries resulting in a permanent scar on her upper forehead; $5,000.00 was awarded in Dillon v. Pope, La.App., 110 So.2d 229, to a girl for cuts on the head and ear and a whiplash injury resulting in prolonged serious pain and incapacity requiring treatment by a physician for more than a year following the accident.
The hereinabove detailed injuries of the child, Karyn, were patently of a very minor nature. She required no hospitalization or medical treatment. If her cuts, bruises and abrasions caused pain to any appreciable degree, the record is barren of evidence of her suffering. Granting she was distraught and upset, it is clear her condition in this regard resulted from anxiety over the condition of her mother rather than her own pain or discomfort. Her residual fear of automobiles was also minor inasmuch as it failed to impress the psychiatrist who examined her preparatory to trial.
It follows the award of the jury was manifestly excessive and must be reduced in the interest of justice. In view of the circumstances shown we believe an award of $1,000.00 will adequately compensate the child for the injuries received.
For the reasons hereinabove set forth, it is ordered, adjudged and decreed the judgment of the trial court in favor of plaintiffs, Kathryn D. McWaters and Marcus V. McWaters, individually, against defendants, Jerome H. Turnage, Sr., individually and as administrator of the estate of his minor *75 son, Jerome H. Turnage, Jr., and Southern Farm Bureau Casualty Company, be and the same is hereby annulled, reversed and set aside and judgment rendered herein in favor of said defendants dismissing and rejecting said plaintiffs' demands.
It is further ordered, adjudged and decreed the judgment of the trial court in favor of Marcus V. McWaters, as administrator of the estate of his minor daughter, Karyn McWaters, in the sum of $5,213.00 against the hereinabove named defendants, in solido, be and the same is hereby amended in that the same is reduced to the sum of $1,000.00 and, except as herein reversed and amended, otherwise affirmed.
Amended in part, reversed in part and rendered.