YARRUT, Judge.
This appeal is from a judgment for property damage in favor of Plaintiff, as the subrogated insurer of Mrs. Morrow’s automobile, resulting from an intersectional collision with another automobile, driven by Defendant. Since the Plaintiff insurance company stands in the shoes of Mrs. Morrow and is liable, vel non, as she would be, the reference to Mrs. Morrow will be the equivalent of reference to the subro-gated Plaintiff insurer.
The accident occurred at the intersection of Mazant Street and North Claiborne Avenue in the city of New Orleans, at *194 2:00 p. m. on July 19, 1963. It was raining at the time. Mrs. Morrow was driving her car on North Claiborne southward in the direction of Canal Street. Defendant was driving his car on Mazant Street travelling east, or towards the Mississippi River. The intersection was controlled by a traffic “Stop” sign governing traffic on Mazant Street. Hence, Mrs. Morrow would have the right-of-way if the two automobiles approached the intersection at approximately the same time at lawful speed.
Defendant is charged with negligence by Plaintiff as follows: In failing to keep a proper lookout; in driving in a careless and reckless manner; in failing to keep his vehicle under control at all times; in driving too fast under the circumstances; in failing to yield the right-of-way to the vehicle being driven by Mrs. Morrow; in failing to stop at the intersection of North Claiborne Avenue and Mazant Street in obedience to the “Stop” sign which controlled river-bound traffic on Mazant Street; in failing to have seen what he should have seen, and in failing to have done what he should have done, in driving into the path of approaching traffic which was proceeding on a through street at a time when it was unsafe to do so.
Defendant answered denying any negligence, but charging that the collision was due solely to Mrs. Morrow’s negligence to wit: In failing to keep a proper lookout prior to and at the time of the accident; in driving her automobile at an excessive rate of speed prior to and at the time of the accident in a hard blinding rain; in failing to yield the right-of-way to Defendant’s automobile which had preempted the intersection after stopping for the “Stop” sign at the intersection; in failing to see and observe Defendant’s car in the intersection of North Claiborne Avenue and Mazant Street prior to and at the time of the accident; in failing to apply her brakes to avoid the collision between her car and Defendant’s car; in failing to use the last clear chance to avoid the accident. In the alternative, Defendant pleads Plaintiff’s contributory negligence.
The only two witnesses were the drivers of the respective automobiles. Their testimony clearly convinces us that the lower court was correct in rendering judgment for Plaintiff since Defendant, even though he may have stopped at the “Stop” sign, should not have entered the intersection until it- was safe to complete the crossing without mishap. Nevertheless, he entered the intersection in the face of the oncoming car of Mrs. Morrow which was travelling at a lawful rate of speed.
 Defendant argues that, since Mrs. Morrow admitted when she was half-way or ISO feet down the block from the intersection she saw an automobile crossing North Claiborne at Mazant, she should have waited until Defendant’s car likewise entered and crossed. This is a non sequitur. The fact that one automobilist, after coming to a stop at a “Stop” sign, risks crossing without mishap, doesn’t justify another automobilist, following the first, to do likewise. Otherwise, the automobilist on the right-of-way street would have to surrender the right-of-way to all approaching from the unfavored street controlled by a “Stop” sign. The jurisprudence is clear that an automobilist should enter a favored street from an unfavored street only if he can enter and complete the crossing without interfering with any automobilist approaching on the right-of-wáy street. Pitre v. All State Ins. Co., La.App., 160 So.2d 402; James v. State Through Bd. of Adm’rs of Charity Hospital of La., La.App., 154 So.2d 497; Hernandez v. State Farm Mutual Automobile Ins. Co., La.App., 128 So.2d 833.
The testimony of the respective parties clearly indicates that Defendant was solely responsible for the accident
*195 Testimony of Defendant:
■“A.- — I was approaching the intersection that you mentioned and there was another car ahead of me that stopped there and then he proceeded on across and then I took his position. I stopped and I saw no cars coming and then I proceeded across. There was a blinding rain and I saw no cars coming.
* * * * * *
■“A.- — The next thing I knew I was struck on the left side by this car which catapulted me around and facing the direction I was coming, facing the direction from which I was coming, completely out of the street and facing back in the opposite direction.
* * * * * *
■“Q. — How far away was she when you first saw her car?
41 A. — Not far enough for me to get out of the way.
■“Q. — Would you say the accident happened almost instantly after you saw her?
■“A. — Yes, sir.
******
“Q. — Was it the blinding rain that kept you from seeing Mrs. Morrow’s vehicle ?
“A. — Yes, sir, the blinding rain.”
Testimony of Mrs. Morrow:
“Q. — At that time, would you describe the rain?
■“A. — Well, it was coming down a little hard.
******
“Q. — And how fast were you driving your vehicle?
“A. — Twenty (20) tó twenty-five (25) miles an hour.
L ******
“Q. — Now, tell us what happened as you approached the intersection of Mazant Street and North Claiborne Avenue?
“A. — Well, I saw this other car come out and I slammed on my brakes and we collided.
“Q. — Where was this other vehicle when you saw it come out, where were you, where was your vehicle when you saw this other vehicle, Mr. Mauffray’s vehicle come out into the intersection?
“A. — I was starting to cross over the intersection.”
BY THE COURT:
“Q. — You. say about ten (10) to fifteen (15) feet?
“A. — As far as I can remember.
******
“Q. — It was just before you got in the intersection?
“A. — Yes.
“Q. — What did this other vehicle do?
“A. — He pulled out from Mazant Street right into my path.
* * * * * *
“Q. — You cut your speed down to twenty-five (25) miles an hour because of the rain coming down ?
“A. — To twenty (20) to twenty-five (25) but I could still see.
*196 ******
“Q. — In other words, there was a car that had stopped at the intersection and then proceeded across before you got there, is that right ?
“A. — Right.
******
“Q. — How far were you away from this automobile that had proceeded across the intersection before the collision? In other words, the automobile before Mr. Mauf-fray’s automobile?
“A. — About the middle of the block.”
Defendant cites the case of Thomas v. Checker Cab Co., 229 La. 1079, 87 So.2d 605, as authority that Mrs. Morrow was guilty of negligence in not permitting him to complete the crossing after he had entered North Claiborne from the “Stop” sign.
As shown by the testimony of both parties, this case differs from the cited case in that, in the cited case the intersection was a blind one. Here both parties approaching the intersection were not prevented from seeing the other because of any buildings or other physical obstructions that made it a blind corner. It is true there was a rather heavy rain at the time, but both parties could easily see the other approaching, notwithstanding the rain at 2 o’clock in the afternoon. Mrs. Morrow had the perfect right to assume that Defendant would obey the traffic law; would stop at the “Stop” sign, and would not proceed into the intersection until she, approaching at the proper speed, cleared the intersection. Quantum is not disputed, only liability.
The judgment of the lower court is affirmed; Defendant to pay the costs in both courts.
Judgment affirmed.