BARNETTE, Judge.
This is a suit for damages to plaintiff’s automobile arising out of a collision at an uncontrolled intersection of two streets of equal width and dignity in the City of New Orleans. From a judgment in favor of plaintiff against Lumbermens Mutual Casualty Company, insurer of the car driven by defendant Joyce A. Toups, in the amount of $739.44, the defendant insurer has appealed.
Plaintiff’s car was being driven by his step-son Brad Kelly on Coliseum Street in the downtown direction. The car driven by Miss Toups was proceeding on Arabella Street from the river toward St. Charles Avenue, thus placing her in a position to the right of Kelly as they approached the intersection of Arabella and Coliseum Streets.
The appellant’s contention is that the proximate cause of the accident was the negligence of Brad Kelly, driver of plaintiff’s car. In the alternative the contributory negligence of Kelly is pleaded in defense. We do not have the benefit of reasons for judgment of the trial judge. We assume he held, as plaintiff argued before us, that Kelly had preempted the intersection.
We are well aware of the jurisprudence of the State that' great weight must be given to the findings of fact of the trial judge, and except in cases of manifest error his findings of fact should not be disturbed. The facts of this case, as we see them from a very careful reading of the testimony, are not difficult to determine, for there is no very serious disagreement among the witnesses. We doubt if our findings of fact are in conflict with the opinion of the trial judge, but we must disagree with him in the conclusion to be drawn therefrom. It is our opinion that plaintiff’s driver, Brad Kelly, did not preempt the intersection. The defendant Miss Toups, approaching the intersection from his (Kelly’s) right, had the statutory right-of-way and Kelly was therefore under the legal duty of stopping or reducing speed to allow her to pass through the intersection ahead of him.
It is our opinion that the testimony, considered in connection with the physical evidence as revealed by the photograph of plaintiff’s damaged automobile, supports the following findings of fact:
*385 Kelly, driving his step-father’s Falcon automobile with two companions on the front seat with him, Miss Townsend and Kenneth McAshan, was proceeding along Coliseum Street approaching the intersection of Arabella Street at a reasonable speed, estimated from very slow to moderate. Miss Toups was approaching Coliseum Street on Arabella at the same time from a direction placing her to the right of Kelly. There is no evidence of negligence on her part, except as argued by plaintiff that the skid marks of approximately thirty-three feet to the point of collision after she applied her brakes indicates that she was driving faster than Kelly, but not necessarily in excess of the lawful speed limit. Miss Toups’ car, a Dodge, struck plaintiff’s car, according to the photographs in evidence, almost squarely on the center post between the front and rear doors. It appears that plaintiff’s car sustained no damage to the right rear quarter panel (that portion from the rear door back). There does appear to be some damage to the right front quarter panel, that is, the right front fender, thus indicating that the blow was slightly forward of the center door post. The point of collision was probably slightly beyond the center of the street in the direction the Kelly car was moving. The force of the impact, together with the forward momentum of plaintiff’s car, caused it to spin around in a clockwise direction causing the left rear quarter panel or fender to strike a post, causing damage to that portion of the car.
The defendant Miss Toups testified that she saw plaintiff’s car before it reached the intersection of Arabella Street and that it was proceeding slowly. She expected it to stop and therefore did not reduce her speed. Suddenly upon realizing it was not stopping, she applied her brakes. She was rendered unconscious for a brief period and has little recollection of anything else.
Kelly and the two other occupants of plaintiff’s car each testified that they were proceeding slowly along Coliseum Street, that Kelly sounded his horn before entering the. intersection, and the first awareness they had of Miss Toups’ car was the sound of her brakes and skidding tires. At about the same instant that Kelly saw or heard the Toups car, he heard his young lady companion scream. The collision was almost instantaneous after the Toups car was seen and heard. Kelly testified:
“Q. — And you testified that you looked to your left and then to your right ?
“A. — Yes, sir.
“Q. — Did you ascertain whether or not it was safe to cross ?
“A. — Yes, sir.
“Q. — Did you believe you had sufficient time?
“A. — Yes, sir.
“Q. — And you didn’t see any on-coming automobile ?
“A. — No, sir.
******
“Q. — Brad, did you ever see the other vehicle prior to the collision?
“A. — Yes, sir, a few moments before, when I heard the tire squealing, you know.”
Miss Townsend testified:
“Q. — Miss Townsend, did you look to your right?
“A.■ — I guess so.
“Q.- — Did you look?
“A. — Yes.
“Q. — Did you observe an automobile approaching?
“A. — Yes.
“Q. — And when was the first time you noticed this automobile?
“A. — I heard the tires screeching and I turned and saw the automobile coming.
*386 “Q. — You didn’t look to your right then until you were in the intersection, is that right?
“A. — That’s right.
"Q. — What called your attention to this automobile ?
“A. — The screeching of the tires.
“Q. — The screeching of the tires made you look right?
“A. — Yes.
“Q.- — Before entering the intersection, before going on to Arabella Street, did you look to your right?
“A. — Yes.”
Kenneth McAshan testified:
“A * * * Brad honked his horn and I turned to the right and I suppose he did the same and we went across the intersection and I heard the squealing of brakes and I turned around and I saw the oncoming car coming to the right of us and I put my arm up to my head to protect myself and I felt the impact and I remember going out, blacking out a little bit and then getting out of the car and— there’s nothing more to say * * *
* * * * * *
“A The first time I saw it it was when I heard the tires screeching and I turned and I saw it.
******
“Q When was the first time you saw the other vehicle ?
“A When we were in the intersection.
“Q Did you see it prior to the collision?
"A Yes.
“Q How long prior to the collision?
“A I’d say when we went into the intersection and I’d say that took about two or three' seconds and then that’s when I saw the car.”
Miss Toups testified:
“Q. — Did you ever observe the other automobile involved in this accident before you reached the intersection ?
“A. — Yes, sir, I saw it.
“Q. — You saw it before?
“A. — Yes.
“Q.- — And where was it when you saw it?
“A. — He was approaching the block and I noticed he was going kind of slow and I thought he would stop and I continued on and when I realized he wouldn’t, I applied my brakes.
“Q. — You had time to avoid hitting him?
“A. — I put on my brakes, that’s all I remember, I was knocked unconscious.
******
“Q. — Do you remember seeing the other vehicle?
“A. — Yes, sir, I do.
“Q. — When did you first see it?
“A.- — Before I got to the intersection. I don’t know exactly what the distance was.
“Q. — And how fast was the vehicle going at that time, approximately?
“A.- — When I first saw it he was going slow and it looked like he would stop so I continued on and then he came fast.
“Q. — When you first saw him was he in the intersection?
“A. — He was within seeing distance.
*387 “Q.—Had he actually entered the intersection ?
“A.—No.”
Fro-m the foregoing testimony, there being no other witnesses to the accident, we must conclude:
(1) That the two automobiles approached the intersection about the same moment;
(2) That neither one was moving at an excessive speed;
(3) That Miss Toups saw plaintiff’s •car approaching the intersection when it was some undetermined distance from Arabella Street; and
(4) That no one in plaintiff’s car saw Miss Toups’ car until they had entered the intersection.
If plaintiff’s approach to the intersection was visible to Miss Toups, her approach must have been visible to him. Therefore it must be assumed that if Mr. Kelly did not see the approach of Miss Toups’ car, he was negligent in not keeping a proper lookout. Mahaffey v. State Farm Mut. Auto. Ins. Co., 175 So.2d 905 (La.App.3d Cir.1965); McWaters v. Turnage, 156 So.2d 68 (La.App.1st Cir.1963); Mentel v. Boston Ins. Co., 144 So.2d 441 (La.App.4th Cir.1962).
Plaintiff bases his right to recover damages on the application of the doctrine of preemption. From the physical facts disclosed by the photograph of the damaged car and the foregoing conclusions, we must reject plaintiff’s contention.
We have discussed the facts in greater detail and quoted testimony at greater length than would be necessary in affirming the trial court’s judgment, and for the additional purpose of showing the almost identical factual situation as presented to us in Musco v. General Guar. Ins. Co., La.App., January 10, 1966, 181 So.2d 881, and the similarity of facts presented to us in Messana v. Allstate Ins. Co., La.App., January 10, 1966, 182 So.2d 93.
In the Musco case, supra, this court said:
“Before a motorist successfully can rely on the doctrine of pre-emption he must show he entered the intersection at a proper speed and sufficiently in advance of the car on the intersecting street to permit him to cross without requiring an emergency stop by the other vehicle; entry into the intersection at the same time or just a fraction of a second ahead of the other vehicle does not create a pre-emption. Scott v. Glazer, La.App., 164 So.2d 185; Glass v. Toye Brothers Yellow Cab Company, La.App., 160 So.2d 329; Bell v. Duplessis, La.App., 150 So.2d 114.
“In the instant case, even accepting the facts most favorable to the plaintiff, she negligently entered the intersection, at approximately the same time as the defendant vehicle would have entered if the latter’s brakes had not been applied, without seeing what she should and could have seen, the approaching defendant car. She did not pre-empt the intersection within the meaning of the rule.”
Our opinion that plaintiff’s automobile did not preempt the intersection and that its driver was contributorily negligent in entering the intersection in front of Miss Toups, who had the directional right-of-way, is entirely consistent with our opinions in the Musco and Messana cases, supra, and fully supported by the cases cited therein.
For these reasons, the judgment appealed from is reversed and judgment is now rendered in favor of defendant Lumbermens Mutual Casualty Company and against plaintiff Carl J. Gulotta, rejecting plaintiff’s demands and dismissing his suit at his cost.
Reversed; judgment rendered.