182 So.2d 93 (1966)
Emile J. MESSANA, Individually and for the Use and Benefit of his minor daughter, Carol Ann Messana,
v.
ALLSTATE INSURANCE COMPANY et al.
No. 2003.
Court of Appeal of Louisiana, Fourth Circuit.
January 10, 1966.
Rehearing Denied February 7, 1966.
Writ Refused March 11, 1966.
*94 A. J. Marciante, New Orleans, for plaintiffs-appellees.
Brierre & Stephenson, Eugene D. Brierre, New Orleans, for defendants-appellants.
Before REGAN, HALL and BARNETTE, JJ.
BARNETTE, Judge.
This is an appeal from a judgment for plaintiffs for damages arising out of an intersectional automobile collision. The appeal also is from the judgment rejecting reconventional demands of the defendants.
The accident in question occurred on a Sunday shortly after noon. The weather was clear and dry. The point of collision was the intersection of Memphis and Kenilworth Streets in the City of New Orleans. The plaintiff's automobile was moving on Kenilworth Street in a westerly direction, or from Marconi Drive toward Canal Boulevard, across Memphis Street; and the defendant was proceeding on Memphis Street in a southerly direction, or from the lake toward the Mississippi River, across Kenilworth. Both streets are approximately 32 feet wide but Memphis Street is the favored street which is so indicated by stop signs posted on Kenilworth Street.
Plaintiff's Chevrolet was struck by a Cadillac automobile owned by W. D. Negrotto, Sr., made a defendant herein, and which was being driven by his daughter, Mrs. Betty N. Alessi, a widow. The point of impact was at about the center of the intersection. The entire front portion of the Cadillac struck the Chevrolet on its right side slightly to the rear of its center. The impact or the forward motion of the Chevrolet, or a combination of both, caused the Chevrolet to be turned about three-quarters around, coming to rest on the southwest corner of the intersection partly on the curbing or sidewalk, facing in a northeasterly direction. The Cadillac came to rest at the point of impact.
Plaintiff Emile J. Messana sought damages individually on account of damage to his automobile and medical expenses for his minor daughter Carol Ann, and damages on behalf of his daughter for her personal injuries. Defendants denied negligence and alternatively pleaded contributory negligence. A separate petition in intervention seeks judgment for defendants on account of damages to the Cadillac in the amounts of $964.36 for defendant Allstate Insurance Company and $50.00 (the deductible amount) for defendant Betty N. Alessi.
After suit was filed, but before trial, Miss Messana reached the age of majority, and during trial an amendment was allowed substituting her as a party plaintiff in her own behalf.
From a judgment in favor of plaintiff Emile J. Messana for $1,052.85 and in favor of Carol Ann Messana for $1,500 and rejecting the reconventional demands of defendants, plaintiffs in reconvention, the defendants have appealed suspensively and devolutively.
The trial judge's findings of fact and reasons for judgment were dictated into the transcript at the conclusion of the trial. The following facts and conclusions were found by him:
(1) That the plaintiff Carol Ann Messana "was not negligent in any manner at the time of the accident";
(2) That she did stop in accordance with the stop sign before entering Memphis Street and looked in both directions before proceeding across;
(3) That Mrs. Betty N. Alessi, driver of the Cadillac, was negligent, based on physical facts rather than on "direct testimony" of specific acts of negligence;

*95 (4) That Mrs. Alessi was not speeding illegally, but that a speed of 20 miles per hour was negligence under the circumstances; considering the parked cars and obstructed view, she was proceeding "in an improper manner" and not keeping a proper lookout under the conditions;
(5) That Mrs. Alessi could have seen plaintiff's car much sooner than she did;
(6) That the impact of the cars was of sufficient force to cause plaintiff's car "to be turned around and driven on the sidewalk";
(7) That plaintiff's car preempted the intersection.
We are fully aware of the well-established rule of jurisprudence that great weight must be given to the findings of fact of the trial court and that except for manifest error such findings should not be disturbed. However, after a careful analysis of the testimony, we are unable to agree fully with the trial judge on all facts found by him or in the legal conclusions which he has drawn from them. See Hayes v. Viola, 179 So.2d 685 (La.App. 4th Cir. 1965); Johnston v. Bearden, 127 So.2d 319 (La.App. 2d Cir. 1961); Dickinson v. City of Minden, 130 So.2d 160 (La.App. 2d Cir. 1961); Owens v. Felder, 35 So.2d 671 (La.App. Orleans 1948).
Other than the drivers of the two cars and a child passenger in the defendant's car, there were two witnesses, Asa T. Sibley and his son-in-law Stanley Abadie, who actually witnessed the accident. The other witness was a police officer who came to the accident scene for the purpose of making an investigation. Except for measurements and a description of the scene, obstructions of view, and distance of vision, his testimony is a repetition of statements of the drivers and witnesses Sibley and Abadie.
Sibley and Abadie were proceeding on Kenilworth Street approaching the plaintiff from the opposite direction. Before they reached the intersection of Memphis Street, they observed Miss Messana and were concerned about the problem of passing her car in the narrow street lined with parked automobiles. They each testified that Miss Messana observed the traffic sign and did come to a complete stop before entering the intersection. They saw the collision from a point estimated by them at approximately 100 feet from Memphis Street at which point they turned into a service alley and did not return to the accident scene until about 15 minutes later. Their explanation for leaving the scene without stopping to investigate or render possible needed assistance was that Sibley had an urgent appointment to meet. After filling his appointment they returned and identified themselves and gave a statement to Officer Sewell.
The significant testimony of Sibley and Abadie relating directly to the accident is that Miss Messana stopped before entering the intersection, that she then proceeded into Memphis Street in a normal manner and speed, and that there were several cars parked on both streets and the view was obstructed. Speaking of the Cadillac (defendant's car) and particularly when he first saw it and concerning its speed, Sibley said, "* * * but as far as judging the speed, well, I'm going to say the Cadillac, because that's all I know about it, I couldn't tell because it come [sic] out from these parked cars and I didn't see it until it hit." Questioned further he said, "Well, I don't know whether it was faster than the speed limit or not, but it appeared to me it was going fairly fast." Abadie said the Cadillac "* * * appeared to be moving better than twenty miles an hour * * *." He later said he had seen it "[j]ust a split second before [the impact]."
Officer Sewell testified that Sibley and Abadie said "* * * they saw this white Cadillac speeding at a terrific rate of speed, plow into the side of the Chevrolet." He said he checked this out by taking "the witnesses and the girl's mother back to the scene where the witnesses claimed to have been at the time and it was a physical impossibility to see the Cadillac any more than ten feet *96 from where the actual impact took place in in the street." We agree that it was impossible for Sibley and Abadie to see the approaching Cadillac from a point 100 feet back on Kenilworth Street near the service alley, considering the relatively narrow streets and the obstructions of view. The defendant, driver of the Cadillac, estimated her speed at about 20 miles per hour. The plaintiff did not see the approaching Cadillac until she was in the intersection and said, "I heard brakes and a horn blow and I looked up and saw this car coming sort of fast toward me."
The trial judge stressed his finding of fact that defendant's car struck the plaintiff's car with sufficient impact to force it to be turned around and driven on the sidewalk. With this factual finding we cannot agree. We base our opinion largely on the evidence revealed by the photograph of plaintiff's car in the record. It reveals clearly that it was struck squarely by the Cadillac, the center of the blow being at the point of the handle on the right rear door which is forward of the right rear wheel. Imprints of the bumper and both head lights of the Cadillac are apparent to us; the right head light striking just under the handle of the front door. While there is serious body damage to the Chevrolet, it was not struck a crushing blow as would be expected of a speeding automobile. The fact of plaintiff's car being turned around and coming to rest on the curbing and sidewalk resulted not from the severity of the blow alone, but also the force of its forward momentum. Considering plaintiff's statement that she did not see the Cadillac until she heard its horn and the sound of skidding tires when it was immediately upon her, we must conclude that she did not apply her brakes before impact. The defendant did apply brakes and left skid marks of 22 feet coming to rest at the point of impact. From these physical facts and the narrowness of the passage between the parked cars, we cannot agree with the trial judge that the plaintiff preempted the intersection. Scott v. Glazer, 164 So.2d 185 (La.App. 4th Cir. 1964); Glass v. Toye Bros. Yellow Cab Co., 160 So.2d 329 (La. App. 4th Cir. 1964); Bell v. Duplessis, 150 So.2d 114 (La.App. 4th Cir. 1963).
Even assuming, arguendo, that plaintiff did preempt the intersection by a narrow margin, this is not by itself sufficient since it is required that this action be coupled with the reasonable expectation of completing the crossing safely. Lawhon v. Town of Homer, 160 So.2d 276 (La.App. 2d Cir. 1964); Dowden v. Houston Fire & Cas. Ins. Co., 81 So.2d 103 (La.App.2d Cir. 1955).
We do agree with the trial judge, however, that the defendant's speed of approximately 20 miles per hour, while not unlawful, constituted negligence under the circumstances. We also agree with the trial judge that the preponderance of evidence shows that the plaintiff did stop before proceeding into the intersection, but we are of the opinion further that she was under a duty to do more than stop. In Mahaffey v. State Farm Mut. Auto. Ins. Co., 175 So.2d 905, 907 (La.App. 3d Cir. 1965), the Court said:
"* * * A motorist must not only stop in obedience to a stop sign, but he is required to see approaching vehicles, which he should see, on the favored street and to yield to them the right of way. Howard v. Insurance Company of North America, La.App., 162 So.2d 165 (3rd Cir. 1964). * * *"
The plaintiff Miss Messana testified that she could see "about half a block or more up the street, without anything blocking [her] vision." If this is true she should have seen the Cadillac, for obviously it was there and if she didn't see it she was negligent in not doing so. Mahaffey v. State Farm Mut. Auto. Ins. Co., supra, McWaters v. Turnage, 156 So.2d 68 (La.App. 1st Cir. 1963); Mentel v. Boston Ins. Co., 144 So.2d 441 (La.App. 4th Cir. 1962). We do not believe the Cadillac was traveling at such an excessive speed that it could have traversed *97 a greater distance than plaintiff could see in the short interval of time before the impact. If, on the other hand, plaintiff's view of Memphis Street was so obstructed by parked automobiles or other objects that she could not see the approaching Cadillac, she was under a duty to proceed into the intersection with great caution. Under such conditions, merely stopping before proceeding was not enough. Lawhon v. Town of Homer, supra; Dowden v. Houston Fire & Cas. Ins. Co., supra; Mustin v. West, 46 So. 2d 136 (La.App. 2d Cir. 1950).
It is our opinion that the trial judge was in error in the following conclusion:
"As a matter of fact, plaintiff stated that she had looked and could have observed for a half-a-block away and observed no traffic. Had defendant exercised the same powers of observation, the Court sees no reason why she could not have observed the plaintiff's car approaching the corner and stopping at least the same distance of half-a-block or even a slight bit less than that distance."
Apparently he has placed a greater duty upon the defendant on the favored street to see what she should have seen and to take precautions accordingly than he has placed on the plaintiff who was under a duty to observe defendant's right-of-way. We cannot hold the defendant negligent and exonerate the plaintiff under these facts.
The testimony of Mrs. Alessi has been carefully reviewed to determine if she had a right to assume that Miss Messana would stop or, if stopped, would remain there in observance of her right-of-way. Audubon Ins. Co. v. Mauffray, 176 So.2d 193 (La. App. 4th Cir. 1965); Frisard v. Oalmann, 175 So.2d 407 (La.App. 4th Cir. 1965); Whittington v. Gully, 164 So.2d 57 (La.App. 4th Cir. 1964); Westchester Fire Ins. Co. v. Dardar, 158 So.2d 239 (La.App. 4th Cir. 1963); Bell v. Duplessis, supra.
While other witnesses testified and it has been determined factually that Miss Messana did stop, this is contradicted by Mrs. Alessi. She testified about the obstructions to vision, but did say she could see from the middle of the block on Memphis Street a car which might be stopped at the intersection. She said she was about 15 feet from the intersection when she first saw the plaintiff's car. (It must have been a greater distance since she left skid marks of 22 feet.) She said the plaintiff's car was then about the same distance from the intersection moving at a "regular" speed. She said: "I kept going. I figured they were going to stop. * * * Because there was a stop sign there. * * * Yes, it looked like it was going to stop and instead of stopping, it looked like they just took off." It was at this point that she applied her brakes. At another point in her testimony she said, "And when the car didn't stop, I tooted my horn and I applied my brakes."
From her own testimony we do not think Mrs. Alessi had a right to rely on the assumption that Miss Messana would stop, when by her own statement she saw that Miss Messana was not stopping within a few feet of the intersection.
Having found as a fact that Miss Messana did stop, if Mrs. Alessi did not see her do so as she insists, she cannot avail herself of any assumption which might have flowed from such fact. If Miss Messana did in fact stop and Mrs. Alessi did not see her do so, we can only assume that Mrs. Alessi at that moment had directed her attention to something else and when she looked back, the plaintiff was in motion again. We can reconcile this apparent conflict of testimony only with the conclusion that the defendant Mrs. Alessi was not keeping a proper lookout. Because of her negligence the defendants are not entitled to recover damages in reconvention.
The judgment in favor of Miss Carol Ann Messana and Emile J. Messana and against *98 the defendants W. D. Negrotto, Sr., Betty N. Alessi, and Allstate Insurance Company is reversed and judgment now rendered in favor of said defendants rejecting plaintiffs' demands. The judgment dismissing the reconventional demands of Allstate Insurance Company and Betty N. Alessi is affirmed. The judgment taxing witness fee for the medical expert, Dr. Blaise Salatich, as cost, is affirmed, to be paid by plaintiffs. All other costs are to be paid by plaintiffs-appellees.
Affirmed in part; reversed in part.