352 So.2d 270 (1977)
Bennie MOORE, Sr., et ux., Plaintiffs-Appellants,
v.
The TRAVELERS INDEMNITY COMPANY et al., Defendants-Appellees.
No. 13366.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1977.
Rehearing Denied December 5, 1977.
Writ Refused February 10, 1978.
*271 Leon M. Pliner, Shreveport, for plaintiffs-appellants.
*272 Blanchard, Walker, O'Quin & Roberts by William Timothy Allen, III, Shreveport, for defendants-appellees.
Before BOLIN, PRICE and HALL, JJ.
En Banc. Rehearing Denied December 5, 1977.
BOLIN, Judge.
Plaintiffs' son was killed when the car he was driving was struck by a state police vehicle. For his wrongful death plaintiffs sued the state trooper-driver of the patrol car, his employer, and the latter's insurer. The state trooper reconvened for his own injuries. The trial court found the accident resulted from the joint negligence of plaintiffs' son and the state trooper, and rejected the demands of both plaintiffs and defendant. Plaintiffs alone appealed. We reverse and render judgment in favor of the plaintiffs.
Since we find the state trooper's negligence in driving a police car at an excessive rate of speed without using flashing lights or siren was a cause of the accident, the principal question is whether the deceased driver was contributorily negligent in crossing a highway in front of the oncoming police car.
Trial on the merits was held in 1971 before the late Judge Eugene B. Middleton. After Judge Middleton's death his successor decided the case from the record. Since the judge who rendered the decision had no opportunity to hear or observe the witnesses, the rule of according great weight to his factual findings is not applicable. Allstate Insurance Co. v. Shemwell, 142 So.2d 866 (La.App. 2d Cir., 1962).
Shortly before midnight on April 25, 1969, plaintiffs' 18-year-old son, accompanied by two companions, was driving the family automobile south on U.S. Highway 171, a four-lane thoroughfare with its northbound and southbound lanes separated by a grassy median. At the same time Sgt. Hill of the Louisiana State Police was driving north on U.S. 171 in pursuit of two speeding vehicles.
Intending to turn left onto a private road leading to a local dragstrip, plaintiffs' son drove into the median at a crossover and brought his vehicle to a stop before crossing the northbound lanes of traffic. At this point the highway was straight and level to the south for a distance of at least 0.7 of a mile. Weather conditions were clear and dry. There was little traffic in either direction on this rural stretch of road.
The state trooper testified his new police car was "semi-marked": only decals on the front doors and a public license plate identified it as a state police unit. The car was equipped with a siren, which could be engaged by depressing a dimmer-like switch on the floorboard, and a portable flashing red light, which could be mounted on the dash and activated by plugging a cord into the cigarette lighter. However, the trooper used neither siren nor flashing light while pursuing the two speeding automobiles. He testified concerning difficulties experienced with the portable light, including his inability to properly secure it to the dash. He also said that, to prevent evasion by the violators, it was his "practice" to refrain from using siren and flashing lights during pursuit on the open highway until apprehension was imminent.
The trooper testified that when he saw the Moore vehicle stop at the crossover ahead of him his car's speedometer indicated a speed of 90 miles per hour. He said he immediately lifted his foot from the accelerator and began to pump his headlight dimmer switch to give warning of his approach. However, according to Sgt. Hill's testimony, the Moore automobile entered the traveled portion of the northbound lanes when his police car was approximately 150 feet south of the crossover and, although he immediately applied his brakes with full force, he could not avoid the resulting collision. The collision occurred near the middle of the outside or right lane. The point of impact was over the right rear wheel of the Moore vehicle. Plaintiffs' son was thrown from the car on impact and killed instantly. The police car left 53 feet of skidmarks prior to impact. Both vehicles came to rest off the highway approximately 150 feet northeast of the point of impact.
*273 The passengers in the Moore vehicle both testified their driver waited in the median until two speeding cars, traveling side by side, passed in front of them and reached a small bridge one-tenth of a mile north of the crossover. Each testified young Moore then looked to his right (south) before attempting to cross the northbound lanes. Both passengers said they also looked right but saw no vehicle approaching.
Plaintiffs' expert witness testified the accident would not have happened had the police vehicle been traveling at the legal speed limit (70 miles per hour at the time of the accident). This expert's conclusions were based on calculations derived from a hypothetical set of facts.
As did the trial court, we find the state trooper's negligence in driving at an excessive speed patent on the face of the record. Ponville v. Travelers Insurance Co., 340 So.2d 331 (La.App. 1st Cir., 1976). Since he had neither his siren nor his flashing red light in operation while driving at a high rate of speed in pursuit of speeding motorists, he is not entitled to the protection of the emergency vehicle statute, Louisiana Revised Statutes 32:24.
Practical difficulties which the officer confronted in the use of his portable light and his "practice" of pursuing violators silently so as to remain undetected did not relieve this driver of his duty to exercise due regard for the safety of plaintiffs' son and his passengers.
We find the trooper's repeated use of his dimmer switch was not sufficient warning to the driver of the Moore vehicle to place defendant under the protection of La.R.S. 32:24C. The alternate flashing of high and low beam headlights is at best a signal fraught with ambiguity. The trooper's use of the dimmer switch only serves as a painful reminder that a siren switch was located only inches away; its use could have saved a life. In summary, defendant driver was guilty of negligence which was a cause of the accident.
Defendants pled the contributory negligence of plaintiffs' son as a bar to recovery for his wrongful death. As with other affirmative defenses, defendants bear the burden of proving contributory negligence by a preponderance of the evidence. Prestenbach v. Sentry Insurance Co. 340 So.2d 1331 (La.1976); Carpenter v. Hartford Accident and Indemnity Co., 333 So.2d 296 (La.App. 1st Cir., 1976).
There is no evidence in the record that young Moore did not look to the south before entering the traveled portion of the northbound lanes from the median. Although his companions testified they looked but did not see the police car approaching, we cannot assume Moore also looked and was oblivious, absent positive evidence of that fact. Rather, since the Moore vehicle was visible to the state trooper, it must likewise be assumed Moore saw or should have seen the police car's approach. See Gulotta v. Toups, 183 So.2d 383 (La.App. 4th Cir., 1966). Moore was then entitled to presume the approaching vehicle was traveling at a lawful rate of speed. Ponville v. Travelers Insurance Co., supra.
In crossing a favored street in front of an oncoming automobile, the test is whether a driver acts as a reasonably prudent and cautious person under the circumstances. Camet v. Guillot, 291 So.2d 438 (La.App. 4th Cir., 1974). The only evidence suggesting deceased did not satisfy this test is the uncorroborated testimony of the state trooper that he was approximately 150 feet south of the crossover when he noticed the Moore vehicle begin to enter the northbound lanes in front of him. However, to infer from the trooper's testimony that Moore was negligent in crossing a favored highway, when he should have known such a maneuver was unsafe, is to ignore the preponderance of the evidence. The admittedly excessive speed of the trooper's vehicle, the location of the collision near the middle of the outside lane, and the testimony of plaintiffs' expert in accident analysis lead us to conclude defendants have failed to prove plaintiffs' son was contributorily negligent. We therefore find the trooper's negligence was the sole cause of the accident and resulting death.
*274 While no amount of money can compensate Mr. and Mrs. Moore for the loss of their son, this court must nevertheless assess a reasonable amount as damages for his wrongful death. The record shows Bennie Moore, Jr. was the oldest of six children. At the time of his death he was a high school student with part-time employment. His employer intended to hire him full-time during the summer months. There is evidence that young Moore willingly assisted his parents financially from the proceeds of his employment. An especially close relationship was shown to exist between both parents and their first-born son. Mindful of these factors and that this action was tried in 1971, we hold an award of $20,000 as damages for each parent is reasonable.
We find the following special damages were proved:

Wellman's Funeral Parlors, Inc. $ 500.00
Forest Park West, Inc. (Interment) 75.00
Value of 1961 Chevrolet sedan less
salvage ($50) 445.00
 ________
 Total $1020.00

Plaintiffs are entitled to legal interest on the amount of the judgment from judicial demand until paid. Since demand was made on August 25, 1969, the rate of interest will be 5%, which was the legal rate on the date of demand. O'Donnell v. Fidelity General Insurance Co., 344 So.2d 91 (La. App.2d Cir., 1977); Winzer v. Lewis, 251 So.2d 650 (La.App.2d Cir., 1971).
The judgment of the trial court is reversed and set aside. There is judgment in favor of Bennie Moore, Sr. against defendants June R. Hill, the State of Louisiana through the Department of Public Safety, Division of State Police, and The Travelers Indemnity Company, individually and in solido, for $21,020, with 5% interest from date of judicial demand until paid.
There is also judgment in favor of Josephine Rachel Moore against the same defendants for $20,000 with 5% interest from date of judicial demand until paid.
Appellees are to pay all costs.
MARVIN, J., dissented from refusal to grant rehearing and assigned written reasons.
MARVIN, Judge, dissents.
I respectfully dissent from the refusal to grant a rehearing because I believe that the decedent driver, plaintiff's son, was clearly contributorily negligent under the facts as found by this court.
1. The scene is essentially rural and there were no distracting conditions on the night in question.
2. The northbound trooper on a divided four-lane highway saw the decedent's vehicle stop in the median neutral area between the divided lanes. When the trooper saw this, he decelerated from 90 mph to a speed not determined during the one or more seconds the decedent's vehicle remained stopped. The two speeding vehicles which passed in front of the decedent traveled 528 feet before the decedent pulled out in front of the oncoming trooper.
3. It is assumed in the opinion that the decedent looked and saw the approaching police car sometime after the decedent stopped. It is also assumed that the decedent saw the "pumping" (continuous on and off flashing) of the high and low beams of the trooper's vehicle.
4. At this time, the trooper's vehicle was going less than 90 mph. The speed limit at this time was 70 mph.
5. When the decedent pulled out into the favored highway (it was not legally an "intersection") the trooper's vehicle was approximately 150 feet away by the trooper's estimate with its lights flashing as they had been for some length of time.
6. While the opinion has characterized the continuous flashing of the lights as "fraught with ambiguity," this certainly afforded notice to the decedent (however "ambiguous") that the oncoming vehicle on the favored highway was not proceeding in the usual or unambiguous manner. There is something unusual, in my opinion, about an oncoming automobile on a favored thoroughfare which continuously flashes its lights at a vehicle sitting perpendicular to the favored thoroughfare.
*275 7. When there is no other traffic involved and where the speed limit is 70 miles an hour, it is patently unsafe and imprudent for a driver of a vehicle perpendicular to the favored thoroughfare and in the median area of the thoroughfare, to drive his vehicle into the thoroughfare in the face of an oncoming vehicle which is continuously flashing its lights at the vehicle in the median.
8. Time and distance factors support a conclusion that the trooper's vehicle had slowed considerably from the speed of 90 mph when the decedent stopped in the median. The passing speeding vehicles covered 528 feet (1/10 mile) before the decedent started to pull out. The fact that the oncoming vehicle with its lights flashing (at whatever speed) was following two vehicles which were obviously speeding past the decedent, should have served as additional and further warning that the oncoming vehicle with flashing lights was proceeding other than in an ordinary manner.
9. Even assuming arguendo, that the trooper was negligent in speeding and in not using his siren and red light (and this question as to cause in fact is extremely close in my mind), the decedent driver was contributorily negligent in entering the highway under the circumstances.
10. The location of the collision near the middle of the outside northbound lane does not negate contributory negligence or lead me to conclude that the defendants failed to prove contributory negligence because the comparative speed of each vehicle is not found, except by the assumption of the expert for plaintiff.
I would grant the rehearing.