McBRIDE, Judge.
Sam Pitti, as intervenor, recovered judgment in the lower court for $352.65 against Otto W. Strong for property damages, personal injuries, and attendant expenses arising out of a collision between Pitti’s automobile and that of Strong, wherein Pitti’s car was hit on its right side at the intersection of Madison and Anson Streets in Gretna, Jefferson Parish, during a drizzling rain on the afternoon of May 28, 1954. Strong appealed therefrom to this court. We reversed the judgment, maintained an exception that the intervention was improperly and imprudently brought, and dismissed Pitti’s demands. See La.App., 105 So.2d 748. On certiorari the Supreme Court reversed and set aside our judgment, overruled the exception, and remanded the cause to this court for consideration and determination of the merits of the intervention. See 237 La. 286, 111 So.2d 115.
Pitti alleged Strong was guilty of negligence in failing to keep his vehicle under control and in failing to respect the preemptive right of way Pitti had acquired; in making answer to the intervention Strong denied negligence on his part and, in the alternative, alleged Pitti was guilty of contributory negligence in several particulars, one being he failed to keep a proper lookout or to have his vehicle under control.
Pitti and Strong, the respective drivers, are the only eyewitnesses.
Madison Street where it intersects with Anson Street is a thoroughfare 64 feet wide with a railroad track bisecting it, the roadway on one side of the track being dedicated to vehicular traffic moving in the direction of Algiers, the roadway on the other side of the track being reserved for vehicles traveling in an opposite direction. Pitti was driving on Anson Street in the direction of the Mississippi River; Strong was traveling along Madison Street in his proper roadway from the direction of Algiers, or, in other words, he approached the intersection from Pitti’s right.
Pitti states upon reaching Madison Street he stopped in obedience to the cross- *518 arm railroad signal post. His testimony then runs:
“Q. You say you stopped? A. Right by the corner.
“Q. By the corner? A. That is right, close to the tracks.
“Q. Before you crossed the tracks, which are on Madison Street? A. Yes, I stopped.
“Q. Why did you stop? A. Because I see a sign and I got the sign stop.
* * * * * *
“Q. When you stopped, did you see any traffic on Madison Street? A. No.
“Q. You didn’t see any traffic? A. No, didn’t see nobody.
“Q. Where did you look? A. Looked both sides.
“Q. Looked on both sides? A. Yes, sir.
“Q. You didn’t see anything? A. I seen one car coming over half a block.
“Q. What car was that? A. I can’t see no more, that track isn’t there.
“The Court:
“Sam, whose car was it? That is what he wants to know, that you saw a half a block away? Did you know whose car that was ?
A. I can’t see too far.”
Pitti attempted to cross Madison Street at 10 miles per hour (as alleged in his intervention—he made no reference to his speed in his testimony), and the crash occurred after he had crossed the intersection formed by Anson Street and the Algiers-bound roadway on Madison Street and also the railroad tracks but before he could negotiate the far roadway in which Strong’s car moved. Pitt made the endeavor to cross the intersection without ever looking again and with utter abandon. He was oblivious of Strong’s car until the very moment of the impact.
Strong, who says he was traveling at 25 miles per hour, was as inattentive as Pitti; he never did see the other car until he drove into it.
Here we have a case where the collision took place within a fairly wide intersection where neither driver’s view was obstructed; yet, both frankly admit they did not see each other’s vehicle until they collided.
The duty the law places on the driver of a motor vehicle to be alert and to keep a lookout for persons and other vehicles who may be in his pathway never ceases. Pitti was under that duty as well as Strong. Neither looked. If Strong was guilty of negligence so was Pitti, and in view of the plea of contributory negligence levelled at him, he cannot recover.
The contention is made that Strong was speeding and it is argued to us the physical evidence denotes that fact. It is said Pitti’s car was turned around and “knocked” for a distance of 45 feet from the point of impact. There is nothing to show that Pitti’s car was “knocked” for that distance, and the evidence indicates it rolled to the point at which it came to rest by virtue of its own momentum, which is not an unusual result after a collision.
The trial judge thought Pitti had gained a pre-emptive right of way by virtue of having entered the intersection in advance of the other car. A motorist does not attain pre-emptive rights where he enters the intersection in a negligent or unlawful manner such as Pitti did without making any attempt to be on the lookout for vehicles on the intersecting street. In order to serve as a foundation for a charge of negligence, a pre-emption must be construed to mean an entry into an intersection with bona fide self-assurance of a *519 full opportunity to clear the intersection under normal circumstances.
Counsel for Pitti has cited us to Thomas v. Checker Cab Company of New Orleans, Inc., 229 La. 1079, 87 So.2d 605, and Booth v. Columbia Casualty Company, 227 La. 932, 80 So.2d 869. We do not think these cases can serve as guides as they are in-apposite, the facts therein being distinguishable from the facts disclosed by the record in the instant case.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that the intervention of Pitti he dismissed, he to pay the cost incurred in the lower court and also the costs in this court.
Reversed.