YARRUT, Judge.
Defendant appeals from a judgment in favor of Plaintiff in his own behalf, for property damage to his automobile, and for medical expenses incurred on behalf of his 18-year old daughter; and as administrator of his. daughter for personal injuries sustained by her in an intersectional collision with an automobile driven by Defendant with Plaintiff’s automobile.
The accident occurred at the intersection of Milne St. and Harrison Ave., New Orleans, about mid-day. The weather was clear and dry. .
Plaintiff’s automobile was being operated by Plaintiff’.s daughter, Yvonne Graf-fagnino, referred to herein as “daughter,” on Milne St., north or towards Lake Pont *436 chartrain. Defendant was driving west on Harrison Ave., or towards West End Blvd.
Plaintiff charges Defendant with negligence :
“a. In failing to keep a proper lookout;
“b. In failing to keep his vehicle under proper control;
“c. In failing to yield right-of-way to your petitioner’s daughter who had preempted the intersection;
“d. In failing to see the vehicle of your petitioner in time to avoid collision;
“e. In failing to stop his vehicle before striking that of your petitioner.”
Defendant denies his negligence and, in the alternative, pleads the accident was caused solely by Plaintiff’s daughter committing the same acts of negligence charged against him, supra.
Harrison Ave. and Milne St. intersect at right angles. Both have two roadways, divided by elevated neutral grounds, about 50-feet wide; I-Iarrison, east and west; Milne, north and south. The neutral ground of Harrison contained wide bushes, five feet high, the nearest bush to the intersection of Milne about 150-feet away.
The daughter testified that, immediately before the accident, she had been driving north on Millie and stopped at the intersection of Plarrison; she then proceeded into the neutral ground area of Harrison and stopped again at the north roadway of Harrison. She looked to her right but did not see Defendant approaching, even though she could see a distance of one block (300 feet). As she saw nothing to her right, she proceeded to cross the north roadway of Harrison at a speed of about seven miles an hour. When the front wheels of her automobile reached a point past the middle of the roadway (about 10 feet), she was struck by Defendant’s car.
The first time she saw Defendant’s car was when her 17-year old guest (Miss Metzler) exclaimed, “Yvonne, that car!” She saw Defendant’s car then for the first time and tried to get out of the way, without avail.
Miss Metzler testified that she did not look to her right until they entered Harrison’s northern roadway, at which time she saw Defendant’s car approaching from a distance of 150 feet. She promptly exclaimed, “Yvonne, that car!”
The daughter testified she did not see Defendant’s car until it was upon them, about 30 feet away; could not estimate its speed, except that it was going pretty fast.
Defendant admitted travelling about 35 miles an hour, more or less, until he saw Plaintiff’s car enter the intersection when he was about 30 feet away. He promptly applied his brakes to avoid the collision, without avail.
Defendant’s car had the right-of-way because he was approaching from the daughter’s right. The speed limit on Milne and Harrison was 35 miles per hour, both being divided thoroughfares.
In order for a motorist to successfully invoke the rule of preemption of an intersection, he must show that he entered sufficiently in advance of a motorist on the intersecting street to permit him to clear the intersection without requiring a sudden or emergency stop by the approaching motorist. Morris v. Peralta, La.App., 127 So.2d 250; Equitable Fire & Marine Insurance Co. v. Allstate Insurance Co., La.App., 137 So.2d 366.
The findings.of fact and conclusions of law by the court in the Kerschner v. Blache, La.App., 52 So.2d 749, case, fit the facts of this case. All that needs to be done is to substitute Milne for Painters, and Harrison for Mirabeau. We quote:
“Plaintiff contends that he was driving his automobile in Painters Street *437 in the general direction of Gentilly Boulevard, at a moderate rate of speed; that when he reached the intersection of Mirabeau, he stopped and seeing nothing approaching for at least one block, he shifted into first gear and accelerated his car to a speed of approximately ten miles per hour; when his automobile had traveled twenty feet into the intersection or when the front portion of his car had reached the center thereof, he observed- defendant’s car, which was then, according to his testimony, one-half block or ISO to 155 feet in Mirabeau Avenue, approaching at a high rate of speed (although the record does not reveal the actual speed thereof) ‘blowing his horn’; and that when he had traveled six more feet (or two-thirds of the intersection) the right rear portion of his car was struck by defendant’s vehicle.
“It taxes both our credulity and imagination to accept plaintiff’s version of the accident, in that he observed defendant’s car 150 to 155 feet away in Mirabeau Avenue, when the front of his car had reached the center of the intersection and that within the time that his car had traveled six feet, defendant’s car had traveled 150 to 155 feet and collided with the rear portion of his car. Plaintiff would, therefore, have us believe that defendant was operating his car at a speed in excess of 110 miles per hour, for this is the speed at which defendant would have had to be driving to travel one hundred and fifty feet in the time that was consumed by plaintiff in driving six feet moving at the rate of ten miles per hour.
“In addition thereto, the record reflects that the accident occurred at 6:30 p. m. in the month of July and it was, therefore, daylight and if plaintiff had looked there was nothing to prevent him from seeing defendant’s car. Whatever the operator of a motor vehicle can see he must see and in legal contemplation he does see. His failure to see what he could have seen by the exercise of due diligence does not absolve him from liability.
“In view of the fact that we are of the opinion that plaintiff was guilty of such negligence as precludes his recovery, we find it unnecessary to consider the plaintiff’s charges of negligence against the defendant.”
Since we must reach the same conclusion here as the court did in the last paragraph, supra, we are of the opinion that Plaintiff’s daughter was guilty of negligence which precludes her recovery, and find it unnecessary to consider Plaintiff’s charges of negligence against Defendant.
However, Plaintiff contends that even though his daughter be held guilty of contributory negligence, we should invoke the doctrine of the Last Clear Chance (Newton v. Pacillo, La.App., Ill So.2d 895) because Plaintiff has established the three essential elements supporting such doctrine, to-wit: “(1) that plaintiff was in position of peril of which he was unaware or from which he was unable to extricate himself, (2) that defendant actually discovered or was in a position where he should have discovered plaintiff’s peril, and (3) that, at the time, the defendant could have, with the exercise of reasonable care, avoided the accident.”
From a finding of the facts as above discussed, it is readily apparent that none of these three elements were present here, hence the doctrine is not applicable.
For the reasons assigned, the judgment of the district court is reversed, with judgment dismissing Plaintiff’s suit, at his cost in both courts.
Reversed.