160 So.2d 329 (1964)
Clifford G. GLASS and Clifford G. Glass, in his Capacity as Natural Tutor of his Minor Child Vicki Lynn Glass,
v.
TOYE BROTHERS YELLOW CAB COMPANY.
No. 1251.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1964.
Samuel Richard Exnicios, New Orleans, for plaintiff and appellee.
Deutsch, Kerrigan & Stiles, Lansing L. Mitchell and Frederick R. Bott, New Orleans, for defendant and appellant.
Before McBRIDE and CHASEZ, JJ., and HENRY F. TURNER, J. pro tem.
McBRIDE, Judge.
On July 8, 1961, a taxicab owned by defendant and operated by its employee, traveling on Chapelle Street in an uptown direction, ran into the side of a small compact car operated by Vicki Glass, then aged 15, which was traveling in the direction *330 of the lake on General Diaz Street. The accident happened in the center of the intersection of said two streets. Clifford G. Glass as natural tutor to the minor sues defendant demanding $10,000 for her physical injuries; he also claims of the defendant for his individual account the sum of $2,500, representing medical expenses incurred and to be incurred in the treatment of the minor's injuries. He recovered judgment for $1,000 for the minor's account and $250 individually, and defendant has appealed.
The negligence charged against the taxicab driver, who incidentally did not appear in court as a witness for the reason his whereabouts could not be ascertained, is speeding, failing to keep a proper lookout and to have his vehicle under control, and in failing to yield the right of way to the car driven by Vicki Glass which is alleged to have pre-empted the intersection.
The defendant denied fault on the part of its driver and averred that the proximate cause of the accident was the negligence of Vicki Glass; in the alternative, defendant pleaded her contributory negligence in the following respects: failure to maintain proper lookout and to keep her car under proper control; speeding; failure to use due caution and care commensurate with the circumstances; failure to yield the right of way; in entering the intersection directly in the path of the cab.
The only two eyewitnesses were Vicki Glass and her friend, Christine Aleff, now aged 17. Vicki had possessed a license to drive an automobile only for about a week before the accident. The two girls attended the same school, and on the day of the accident, upon leaving school, each agreed to allow the other to drive her automobile homeward, Vicki taking Christine's compact car and Christine taking Vicki's car.
The streets in question are approximately the same width, are paved, and of equal dignity. The intersection is not controlled by semaphore signals or traffic signs and nowhere in the record do we find that a blind corner is involved. There is no reason we know of why each driver before reaching the intersection should not have seen the approach of the other automobile.
Vicki stated she was driving Christine's car about 20 miles an hour and the taxicab approached the intersection at a speed of between 30 and 40 miles per hour. She stated that as she neared Chapelle Street, she blew her horn and shifted into second gear and that she did not see the taxicab coming from her right until she had just started to enter the intersection and the cab was at that time about 30 or 40 feet away. Further she testified thusly:
"Q. Now you say that you looked for traffic before entering the intersection?
"A. Yes.
"Q. You saw this cab approaching at a terrific speed?
"A. Yes.
"Q. Now how far from the intersection were you when you first saw the cab?
"A. I was right at the beginning.
* * * * * *
"Q. How far from the intersection were you when you could see two houses down the street?
"A. At the beginning.
"Q. At the beginning?
"A. Yes.
"Q. In other words, you couldn't see down the street at all before you got to the beginning of the intersection?
"A. I don't remember.
"Q. You don't remember?
"A. I can't picture it now.

*331 "Q. You could see two houses down when you got to the edge of the intersection?
"A. I think you can see more than two houses before you get to the beginning of the intersection."
Christine Aleff said she was following about 3 or 4 car lengths; that before reaching the intersection, Vicki's car slowed down and it appeared as though she had shifted gears; she went into the intersection and "it was all at the split second thing."
In view of the uncontradicted testimony that the taxicab traveled at a speed of from 30 to 40 miles an hour, the driver thereof must be held guilty of negligence in that he was violating the maximum speed regulation of 20 miles per hour prevailing at the locus.
The major question in the case is whether Vicki Glass was guilty of contributory negligence. We have carefully read and given her testimony thought and study, and the only conclusion we can reach is that the young lady was also guilty of negligence proximating the accident. As we stated before, the intersection appears to be an open one, the vision of neither driver being obscured. We do not understand why she did not observe the oncoming taxicab before she reached the intersection. Had she been maintaining an adequate lookout, there is no doubt in our minds that she would have done so in time to have taken such precautions as were necessary to prevent the happening of the unfortunate accident. Nowhere does she say she looked to her right until she was on the verge of entering the intersection when nothing could have been done to have averted the accident.
It is well settled that a motorist is under the duty to be vigilant and to look at all times, and he must see what he can see and in legal contemplation he does see, and his failure to observe what could have been seen by exercising due diligence does not absolve him from negligence.
Vicki Glass should have been especially vigilant upon her approach to the intersection in view of the provisions of Sec. 38-133 of the Code of the City of New Orleans and LSA-R.S. 32:121(B) under which she was required to yield the right of way to vehicles approaching at approximately the same time on the intersecting street from her right.
It is claimed that the car Vicki Glass was driving had entered the intersection first, which fact gave that vehicle a pre-emptive right of way over the taxicab to continue a crossing of the intersection. A motorist does not attain pre-emptive rights where he enters the intersection in a negligent manner such as Vicki did without making any attempt to be on the lookout for vehicles on the intersecting street. The motorist, before he can successfully rely on pre-emption, must show that he made entry into the intersection at proper speed and sufficiently in advance of the car on the intersecting road to permit him to proceed on his way without requiring an emergency stop by the other vehicle. The entry into the intersection just a fraction of a second ahead of the other vehicle does not create a pre-emption. Emmco Insurance Company v. Globe Indemnity Company, La. App., 119 So.2d 516; Vernaci v. Columbia Cas. Co., La.App., 71 So.2d 417; Lafont v. Nola Cabs, Inc., La.App., 65 So.2d 918; Aucoin v. Houston Fire & Cas. Co., La. App., 44 So.2d 127; Butler v. O'Neal, La. App., 26 So.2d 753.
A very suspicious circumstance that cannot be ignored appears from the testimony of Levet, a traffic division officer who investigated the accident. The officer testified that he found plainly-visible skid marks on General Diaz Street which were made by the wheels of the automobile Vicki was driving and that these measured *332 36 feet in length before the point of impact which means simply that the car skidded that distance indicating Vicki must have applied her brakes at least 21 feet before she reached the intersection. Chapelle Street is but 26 feet 10 inches wide and after the collision Vicki's car slid on its side or top for a distance of 45 feet striking a fire hydrant. The implications are too obvious for comment.
The trial judge was clearly in error in rendering the judgment; one or more counts of contributory negligence on the part of his daughter having been made out bar any recovery by plaintiff.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of defendant dismissing plaintiff's suit at his cost in both courts.
Reversed.