FRUGÉ, Judge.
Plaintiff, Jessie Vaughn, instituted suit against the defendants, Giford Cortez, Cortez Construction Company, Inc., and General Accident Fire & Life Assurance Corporation, Ltd., the liability insurer of Cortez’s automobile. This suit was to recover the sum of $20,694.50 for damages and personal injuries incurred by him as a result of an accident which occurred on September 22, 1962.
Defendants answered and denied the existence of any negligence on the part of Cortez. In the alternative, they pleaded the contributory negligence of Vaughn and that he assumed the risk by which he was injured.
From a judgment in favor of the defendants the plaintiff has perfected this appeal.
The record reveals it was customary for some of the employees of Cortez Construction Company to meet at one of the local saloons on payday for a few drinks. On September 21, 1962, around 5:30 P.M., plaintiff, defendant Cortez and others met in Pierre Part for this purpose. These parties continued drinking most of the night.
Plaintiff admitted having twelve or thirteen whiskeys and Cortez to having seven or eight between the hours of 5:30 P.M. and 12:00 A.M.
Around 1:30 A.M., September 22, 1962,. Cortez agreed to drive the plaintiff and three others home. The three other men in the car were Stanley Landry, who sat in the right front seat, and Mackery Guillory and Hubert Landry, both of whom sat in the rear seat with plaintiff.
The group decided to take the levee road to go to Bayou Pigeon, as it was the shortest route. Since this route was not in general use, tall grass and weeds had grown on it, leaving two trails where the wheels of vehicles could pass.
Having traveled some distance on the road, they encountered some cows in the immediate vicinity and plaintiff volunteered on his own volition to get out of the car and drive the cows off the road. Having succeeded in driving the cows away, plaintiff did not re-enter the automobile but got on the left side of the hood to be in a better position to drive off other loose livestock that they might encounter. Shortly after encountering additional loose livestock, Vaughn fell off the hood of the car on the left side and was injured. Plaintiff alleged that he was injured by Cortez’s negligence in:
“a) Driving while a guest passenger was riding on the hood of his car;
b) Driving while intoxicated;
c) Striking a bump in the road suddenly and applying his brakes suddenly after striking said bump, thereby causing his guest passen *798 ger to fall off the hood of the car;
d) Excessive speed for the road, which was a humpy dirt road, and for the position of his passenger;
e) A malicious wilful, intentional desire and act of throwing plaintiff from the car.”
The lower court held that Vaughn, after having been drinking, placed himself in a “most improvident” and “very dangerous” position by riding on the hood of a car ■driven by one he knew also had been drinking. The lower court could not find any •evidence that Cortez had intentionally braked his vehicle in order to “watch him fly,” causing a willful and deliberate injury to the plaintiff. The physical evidence that Vaughn was found in the weeds •on the left side of the car four feet back •of the front bumper was conclusive proof to the lower court that Cortez had not speeded up his vehicle in order to slam on the brakes and throw Vaughn off.
Inasmuch as plaintiff’s suit is predicated on Cortez’s negligence and the defense thereto is a denial of negligence, and in the alternative the contributory negligence or assumption of risk, we deem it expedient to first consider such pleas, for if the facts •disclose the existence of negligence on Vaughn’s part without which the accident could not have happened, it becomes unnecessary to determine whether there was •primary negligence on Cortez’s part.
The testimony of the plaintiff revealed that he had been drinking from 5:30 in the afternoon until after midnight. He testified that- he was not “drunk” but he was not “sober”. He readily admits to getting •out of the car to clear cows from the path of the car and getting on and riding on the Rood. Plaintiff testified that when he first ■got on the hood of Cortez’s vehicle the •speed of the car was five miles per hour. After passing the first small herd of •cattle, Cortez continued down the road “about a mile, a mile to a half, [to where] they had some more cattle and he [Cortez] was driving slow, about IS — 20.” It was after passing this second small herd that plaintiff testified Cortez speeded up and he fell off when Cortez braked the vehicle.
Cortez denied he speeded up, saying he did not go over 10-12 miles per hour on this road. The only other witness, Mack-ery J. Guillory, Jr., testified that the speed of the car was around 20-25 miles per hour the entire time Vaughn was on the hood of Cortez’s vehicle.
Cortez testified that after driving onto the levee road they encountered some cows in their path so he stopped and Stanley Landry, the passenger in the front seat, started to get out of the car and move the cattle when Vaughn said he would. Vaughn admitted he voluntarily got out of the car to move the cattle from the path of the car. Vaughn then positioned himself on the hood of the car on the “lefthand side of * * * the front left fender * and they continued down the levee road. Encountering a second small herd of cattle, Vaughn got down from the hood and attempted to catch one so he could ride it. Vaughn admitted he was riding on the hood in order to be able to catch a cow and ride it, but denied he got off the hood a second time. Cortez further testified that after the second stop Vaughn got back on the hood, this time placing himself in a backward position in order not to block Cortez’s vision.
Proceeding along in this manner, Cortez stated he noticed Vaughn was slipping forward across the hood. Aware that Vaughn would slip off and fall in front of and beneath his vehicle, he brought the car to a stop suddenly and Vaughn fell off to the left of the car.
Vaughn was found four feet behind the front bumper and six feet to the left of the car in the grass. Cortez emphatically denied that he intentionally braked the car in order to throw Vaughn off the hood or *799 that he made the statement immediately prior to the accident, “Watch me make him fly.”
It is clear from the record that the lower court did not err in holding that Vaughn was contributorily negligent and that he assumed the risk of injury by his actions.
Plaintiff on appeal has strongly urged that he can not be deemed contributorily negligent for riding with a driver so intoxicated that he knew or should have known that the driver could not properly operate the vehicle.
Whether there is merit to this argument need not be considered under the factual situation presented by this case. It is absolutely clear that all the parties in this vehicle had been drinking most of the night. Whether or not Cortez was the most intoxicated or Vaughn was the most intoxicated is merely speculation. Both Vaughn and Cortez deny being intoxicated to the extent that they did not know what they were doing.
Our jurisprudence is that when a person has become voluntarily intoxicated he is still held to the standard of care for his own safety as that required of him if he were sober. Huckaby v. Bellow, La.App. 3 Cir., 175 So.2d 914; Manuel v. United States Fire Insurance Co., La.App. 3 Cir., 140 So.2d 702. Following the jurisprudence, it means that if Vaughn, due to his condition of intoxication, drunkenness, insobriety, inebriation, or excessive whiskey tippling, was a contributing cause of his fall, then his recovery is barred.
The testimony of both Vaughn and Cortez is that Vaughn wanted to “play cowboy” by catching a cow and riding it, using the hood of the car as a cow pony in order to get close enough to it to jump on its back. While this may not be considered the conduct of an intoxicated man, it cannot be truly considered the conduct of a sober and prudent man.
Had Vaughn re-entered the vehicle after chasing the cattle from the path of the car,, the accident would never have occurred. It would have been physically impossible for him to have fallen off the hood of Cortez’s vehicle if he had re-entered it and taken his place in the back seat. Plaintiff should have anticipated the danger and the chance that he might be injured if it was necessary for the driver to brake the vehicle.
As this court stated in the case of Jack v. Sylvester, La.App. 3 Cir., 150 So. 2d 789:
“When a person voluntarily exposes himself to a known danger, he assumes the risk, and, as stated by some courts, is guilty of contributory negligence if injured. Spears v. American Fidelity & Casualty Company, La.App., Orl.,. 1960, 123 So.2d 513; Constantin v. Bankers Fire and Marine Insurance Co, La.App. 3 Cir., 1961, 129 So.2d 269; and, Gaspard v. Grain Dealers Mutual Insurance Company, La.App, 3 Cir., 1961, 131 So.2d 831.”
The facts establish that without the contributory negligence of Vaughn in riding on the hood of this car, the accident and the resulting injuries to him would not have-occurred.
The defendants have carried the burden of proof that Vaughn’s own actions were the contributing cause of his injuries.
Although there were three other guest passengers besides Vaughn in this vehicle at the time of the accident, only one testified. The record reveals that one of the two missing witnesses was confined to a mental institution at the time of this trial and the other was sick and unable to appear. The trial judge reserved judgment in this-case, giving plaintiff’s counsel opportunity to obtain this sick witness’s testimony. Twelve and one-half months after the trial this witness’s testimony still had not been taken but a stipulation was filed at that *800 time by the litigants that if two other witnesses were produced they would testify to a statement made by this missing witness concerning the accident.
In refusing plaintiffs application for a new trial made in February, 1965, the lower court correctly ruled that if the testimony of this witness was of ample importance to his case, he had sufficient time to produce this witness or his deposition between the time of trial, which was October 25, 1963, and the rendition of judgment on February 15, 1965.
For the foregoing reasons the judgment of the lower court is affirmed, costs of this appeal to be taxed to the appellant.
Affirmed.