225 So.2d 139 (1969)
Robert WEST, on His Own Behalf and as Administrator of the Estates of His Minor Children, Linda and George West
v.
TRAVELERS INDEMNITY CO., Royal Globe Ins. Co., and Aetna Casualty and Surety Company.
No. 3454.
Court of Appeal of Louisiana, Fourth Circuit.
July 7, 1969.
*140 James F. Mulla, Jr., New Orleans, for plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John J. Weigel, New Orleans, for defendant-appellant-appellee.
Adams & Reese, Sam A. Le Blanc, III, and Timothy G. Schafer, New Orleans, for defendant-appellee.
Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Thomas F. Jordan, New Orleans, for defendant-appellee.
Before YARRUT, SAMUEL and CHASEZ, JJ.
SAMUEL, Judge.
Individually and in his capacity as the administrator of the estates of his two teen-aged minor children, George and Linda West, plaintiff instituted this suit for personal injuries incurred by them in an accident involving two automobiles and for his medical expenses resulting therefrom. There are three defendants: Royal Globe Insurance Company, liability insurer of the owner of the car in which the minors were guest passengers; Aetna Casualty & Surety Company, liability insurer of the driver of that car; and Travelers Insurance Company, liability insurer of the owner-driver of the other vehicle involved. Defendants answered in the form of general denials. In addition to its answer, Aetna filed a third-party demand for contribution against Travelers and its insured in the event of a judgment in favor of the original plaintiff and against Aetna.
Following a trial on the merits judgment was rendered in favor of plaintiff and against Travelers and Royal Globe, in solido. The judgment is in favor of plaintiff, individually, in the sum of $298.12 for medical expenses incurred by him and, in his capacity as the administrator of their estates, for the sums of $650 and $850 for the injuries suffered by his son and daughter, respectively. The judgment dismisses plaintiff's suit against Aetna and also dismisses that defendant's third-party demand against Travelers and its insured.
Plaintiff has appealed contending the amounts awarded for medical expenses and personal injuries are inadequate. Travelers also has appealed seeking reversal of the judgment rendered against it on the ground that there was no negligence on the part of its insured. We note that the only question before us relative to liability is whether or not Travelers' insured was guilty of negligence proximately causing the accident.
The accident occurred at about 6:50 p. m. on November 8, 1964 in the intersection of Belfast and Joliet Streets in the City of New Orleans. It was dark at the time. The minors were guest passengers in a Volkswagen which was proceeding toward the river on Joliet. The other vehicle, Travelers' insured, a Chevrolet with two passengers, was traveling downtown on Belfast. The streets, which were of equal dignity and uncontrolled by traffic lights or signs, intersect each other at right angles and each was approximately 20 to 24 feet in width. The legal speed limit was 20 miles per hour. The Chevrolet entered the intersection on the right of the Volkswagen driver and the impact occurred in approximately the center of the intersection. Testimony relative to the manner in which the accident occurred was given by the two drivers and their guest passengers; there was no other eyewitnesses.
*141 Plaintiff's version of the accident is that the driver of the Volkswagen in which the minors were riding was proceeding at a speed of about 15 miles per hour. She had picked up her passengers at their home around the corner. As she approached the intersection she slowed (there is some contradiction between the testimony of the driver and her passengers regarding whether or not she slowed the vehicle prior to entering the intersection), saw the other vehicle, approximately one-half block away and traveling toward her at about 40 miles per hour, put her car into second gear, blew her horn and proceeded across the intersection. Her vehicle was struck on the right door and knocked into a telephone pole.
Travelers' version of the accident is that their Chevrolet was proceeding at approximately 15 miles per hour. The driver came to a full stop at the intersection, looked to the right and left, saw the Volkswagen one-half block away approaching at a speed of about 30 miles per hour, and started across. He never took his eyes off the other vehicle, which did not come to a stop until after the collision. When he was six to ten feet into the intersection he realized the Volkswagen would not stop so he veered to his right and applied his brakes but he was unable to avoid the collision.
Travelers contends there was no negligence on the part of its Chevrolet driver because he had the directional right of way under both state statute and city ordinance (LSA-R.S. 32:121(B); Section 38-133 (b), Traffic Ordinance, City of New Orleans), which he could assume the Volkswagen driver would honor. Aetna argues that the right of way has no application because the Volkswagen preempted the intersection.
Quite clearly, here there was no preemption by the Volkswagen because the two vehicles entered the intersection at approximately the same time. Before he can successfully rely on preemption a motorist must show he entered the intersection at a proper speed and sufficiently in advance of the car on the intersecting street to permit him to cross without requiring an emergency stop by the other vehicle; entry into the intersection just a fraction of a second ahead of the other vehicle does not create a preemption. Barrois v. Noto, La.App., 215 So.2d 676; Glass v. Toye Brothers Yellow Cab Company, La.App., 160 So.2d 329; Bell v. Duplessis, La.App., 150 So.2d 114; Shipley v. Schittone, La.App., 148 So.2d 918; McDonald v. Bramel, La.App., 147 So.2d 68; Lemoine v. Vicknair, La. App., 144 So.2d 298; Graffagnino v. Warwick, La.App., 141 So.2d 434.
We also agree with the trial judge's conclusion that the Chevrolet driver was guilty of negligence which proximately caused the accident. That driver did have the directional right of way as contended by Travelers. However, the degree of care required of the operator of a motor vehicle enjoying such a right of way is much greater than that imposed on a driver approaching an intersection on a favorable traffic signal light or on a favored or right-of-way street controlled by traffic signs; the motorist enjoying a directional right of way must exercise reasonable care and caution to prevent an accident after actually seeing an approaching vehicle on the other intersecting street; and where such a motorist should reasonably and timely realize that the approaching vehicle will continue its approach and will obstruct his passage, he is guilty of negligence should he fail to take every reasonable precaution to avoid a collision. Smith v. Borchers, 243 La. 746, 146 So.2d 793; James v. Employers Liability Assurance Corporation, La.App., 202 So.2d 424; State Farm Mut. Auto. Ins. Co. v. Niagara Fire Ins. Co., La.App., 183 So.2d 145.
According to his own testimony, the Chevrolet driver stopped at the intersection, observed the Volkswagen approaching at about 30 miles per hour from one-half block away, kept his eyes on that *142 approaching vehicle, and then proceeded from his stopped position into the intersection, striking the right side of the Volkswagen which had failed to stop. Under these facts he must have entered the intersection either at approximately the same time the Volkswagen made its entry or a fraction of a second thereafter. Having observed the Volkswagen continuously from the time it was one-half block away, he reasonably should have realized that vehicle was not going to stop for the intersection and, quite likely, would obstruct his passage if he attempted to cross ahead of it. Clearly, he failed to exercise reasonable care and caution in proceeding to enter the intersection from his stopped position at that time.
Testimony relative to the remaining question of quantum was given by both of the minors; their mother (who generally simply corroborated the testimony of her children); and Drs. Emanuel F. Salerno, a general practitioner and the treating physician, D. E. Richardson, a neurosurgeon, George C. Battalora and H. R. Soboloff, orthopedic surgeons, and William A. Roy, a general surgeon.
George West testified he was sitting in the back seat. His head, back, knee and ankle were injured in the collision. Immediately after the accident he was seen in the emergency room at a local hospital where he was told to take an aspirin and see his family doctor, which he did the following day. Dr. Salerno treated the knee with an elastic knee band and myoflex ointment. He wore the band for 6 or 7 months after the accident. The doctor prescribed a back brace which he wore for 4 months. Young West further testified he missed 20 to 25 days of school and was forced to curtail his activities including dancing and football.
The medical evidence concerning George West's injuries is as follows:
Dr. Salerno testified: He was notified immediately after the accident and ordered x-rays taken at the hospital. George complained of a hematoma (on the head), pain in his back, and general contusions. Two weeks later he also complained about his left knee. The doctor found George had a sacroiliac strain and a slight injury to the ankle which was negative for fractures. X-rays of the knee were negative but heat application was prescribed as well as back, and later, knee supports. The doctor felt the knee complaint was due to a ligament condition and referred him to Dr. Battalora.
Back treatment consisted of infra red baking and robaxin and other relieving drugs. The back complaints did not last long but the knee complaints continued. The doctor was unable to estimate the number of visits George had made for examination or treatment. Most of the complaints started to develop in 1965 and 1966. Dr. Salerno testified that to give George the benefit of the doubt he could only call the injury to the knee a strain of the ligament in the left condile which x-rays and Dr. Battalora did not verify.
Dr. Soboloff saw George on behalf of plaintiff on February 19, 1965, at which time his complaints were predominantly in the low back area. X-rays were taken. There were no objective findings nor was there any explanation from an orthopedic basis for George's complaints of persistence of soreness.
Dr. Battalora also testified for plaintiff. He examined George on August 24, 1966, approximately 18 months after the accident. At that time George complained of difficulty with both knees. He told this doctor of the injuries received in the accident, stating his back had cleared in about a month but both knees still gave him trouble; the right knee tended to be painful and gave way occasionally; but the left knee gave him the most trouble and was not improving. The examination, limited to the lower extremities, was negative except for mild patella crepitation, the possibility being he could have had some type *143 of strain injury. Since George denied any swelling in the knees after the accident, the doctor concluded the strain injury was mild and the left knee joint crepitation preexisted the injury because George had indicated he had not hit his knee on anything at the time of the accident.
Dr. Roy, who testified on behalf of Travelers, saw George on November 27, 1964. A history was taken and an examination performed. The boy stated he had hurt his left angle, back and neck and had suffered a brain concussion in the accident. The doctor was of the opinion George had made an excellent recovery from the various sprains and bruises he sustained in the accident. The examination of the back, neck and ankle was normal.
Linda West testified she had a large bruise on her right arm immediately after the accident. She went to a local hospital that night and saw her own doctor three days later for her back. About a week after the accident she started feeling nauseous and began vomiting after almost every meal. Because of continuing nausea and vomiting, which she had never experienced prior to the accident, during the following February she spent two weeks in a hospital for tests to determine the cause thereof. Her vomiting stopped after she came out of the hospital. Treatment for her back consisted of bathing and rubbing with myoflex. The bruise on her arm cleared in two weeks following treatment with pills to dissolve the blood. Dr. Salerno advised the use of a corset for her back. Including the two weeks in the hospital, she missed about 20 days of school. Her activity of bowling was curtailed because of her back and she had difficulty catching up on her school work. She wore the corset on and off for 4 or 5 months and took infra red treatment in the doctor's office on 10 to 15 occasions.
Dr. Salerno saw Linda shortly after the accident. She had a large hematoma on the arm, a strain of the deltoid muscles and a violent contusion of the abdomen. During the first month he did not consider her condition serious, but he became concerned when symptoms of vomiting commenced and continued. She was complaining of vomiting in the latter part of 1964 (about November 27) and was hospitalized for 12 days in 1965 for these complaints. Rigid examinations, including blood work and x-rays, were performed. Excepting only a mild spasm of the duodenum, all tests run were negative. While it is clear Dr. Salerno could not state with certainty the exact cause of Linda's nausea and vomiting, from a careful analysis of his testimony we conclude he felt that condition was due to the injuries she had sustained in the accident, probably as a result of the violent concussion over the area of the liver and kidneys.
Dr. Soboloff saw Linda and performed an orthopedic examination on March 23, 1965. She complained of soreness in the rib cage on the second, third and fourth ribs anteriorally on the right and soreness across the low back sacral joint. X-rays were taken. The examination was negative and the doctor could find no orthopedic reason for her complaints.
Dr. Roy saw and examined Linda on November 27, 1964. In view of the negative x-rays taken one week after the accident and the absence of physical findings, he felt the rib cage condition would subside in a short time without further treatment. Linda told this doctor she had vomited almost daily after every meal since November 11, three days after the accident, but she had failed to mention this to her own physician. If she had been vomiting as frequently as claimed, he found it difficult to believe she would not have told her treating physician. He had no explanation for the vomiting and did not attempt to assign a cause therefor. He did state that, if daily vomiting was associated with trauma, he would expect to find rigidity of the abdomen, bruise, muscle spasm, tenderness, presence of a mass in the abdomen, dehydration and weight loss. He found none of those. He was of the opinion she had sustained a contusion of her *144 right arm manifested by a fading bruise and contusions of her right chest as from her history.
At the request of Dr. Salerno for the purpose of determining whether her symptoms of persistent nausea and vomiting were coming from the central nervous system, Dr. Richardson saw and examined Linda on February 18, 1965, while she was in the hospital. He found no neurological explanation for those symptoms.
The trial judge found George West had suffered only a "bump" on the head, which cleared in a few days, and a mild back sprain for which a corset was prescribed. He was of the opinion the knee injury complained of was not a result of the accident. Nor did he believe that the corset had been worn for four months as testified to by George; the brace was introduced in evidence and was found to be in a "like new" condition. George did miss a few days from school.
We agree with those findings. Accordingly, we are of the opinion that the award of $650 for the only injuries which plaintiff has proved, with the required legal certainty, were sustained by George as a result of the collision, is not so inadequate as to constitute an abuse of the trial court's discretion in assessing damages. Boyer v. Mexic, La.App., 222 So.2d 554; Ricardo v. American Indemnity Company, La.App., 201 So.2d 145; Daigle v. Hardware Mutual Fire Insurance Co., La.App., 165 So.2d 643.
The trial court found Linda West had suffered a bruise on her arm and some injury to her ribs or back, the exact location of the latter being unclear, and that she recovered from both in a short time. He was of the opinion that the nausea and vomiting complained of by Linda did not result from the accident, that the corset prescribed for her (as was the case with the corset prescribed for George, it also was introduced in evidence and was in a "like new" condition) was worn only infrequently and that she missed only a few days from school.
We are in agreement with all of those findings as to Linda except the ones relative to nausea and vomiting and time lost from school. It follows, of course, that if the nausea and vomiting were caused by the accident, the school time lost, for which the defendants cast are liable, including the 12 days spent in a hospital in an effort to determine the exact cause of that condition, was greater than it was found to be by the trial judge.
We are satisfied that plaintiff has carried his burden of proving Linda's nausea and vomiting were caused by the accident. There is no doubt that condition did begin and become persistent only shortly after the accident, and the opinion of Dr. Salerno, a general practitioner and the treating physician, must be given greater weight than the contrary opinion of Dr. Roy, a general surgeon, who only examined Linda on one occasion and who, we note, did not attribute the condition to any other cause. Treadway v. State Farm Insurance Company, La.App., 204 So.2d 609.
The record establishes that the expenses occasioned by Linda's nausea and vomiting were $328.60, the hospital bill, and $225, a portion of Dr. Salerno's charges, or a total of $553.60. As the trial court award to plaintiff in his own behalf does not include those expenses, we will increase that award by that total amount. The award to plaintiff in his capacity as administrator of Linda's estate will be increased to $2,500, an amount which, in our opinion, is adequate compensation for all injuries sustained by her as a result of the accident. Rowe v. Travelers Insurance Company, La.App., 221 So.2d 61; Marcantel v. Aetna Casualty and Surety Company, La.App., 219 So.2d 180; Nesbit v. Travelers Insurance Company, La.App., 218 So.2d 396.
For the reasons assigned, the judgment appealed from is amended so as to increase the awards in favor of plaintiff, Robert *145 West, in his own behalf, from $298.12 to $851.72 and, as administrator of the estate of his minor daughter, Linda West, from $850 to $2,500. As thus amended, and in every other respect, the judgment appealed from is affirmed; costs of this appeal to be paid by the defendants, Travelers Indemnity Company and Royal Globe Insurance Company.
Amended and affirmed.