BOLIN, Judge.
Henry Brantley, individually and on behalf of Dennis Brantley, his 12-year-old son, instituted this suit for damages growing out of an intersectional collision between an automobile driven by Helen J. *721 Myles and another vehicle driven by Phillip Brown, a minor. Dennis was riding on the fender of the latter vehicle. Made defendants were Gracie M. Adams, mother and natural tutrix of Phillip Brown, Helen Myles and Traders and General Insurance Company, insurer of the Myles vehicle.
In a written opinion the trial judge rejected plaintiff’s demands because Dennis Brantley was guilty of contributory negligence by riding on the fender of the Brown car. From judgment in accordance with this opinion plaintiff appeals. For reasons hereinafter expressed we reverse the judgment of the lower court and render judgment in favor of plaintiff.
The issues are:
(1) Whose fault caused the accident resulting in the damages made the basis of this suit?
(2) If the first issue be resolved in favor of plaintiff, what amount should be awarded as damages ?
Since our appreciation of the facts differs somewhat from that of the trial court, we shall briefly set forth the facts as we find them.
The accident occurred on July 29, 1969, between S :00 and 6:00 p.m., at the intersection of Kentucky and Frederick Streets in the City of Shreveport. Frederick Street runs generally east and west and Kentucky Street north and south. Frederick Street is hard-surfaced and Kentucky is graveled, covered with oil. The intersection was not controlled by any traffic device or stop signs at the time of the accident. By a municipal ordinance as well as a Louisiana Statute, the motorist approaching from the right is accorded a “statutory right-of-way” if the vehicles enter the intersection at approximately the same time. Since the Brown vehicle was proceeding west on Frederick and the Myles car was traveling north on Kentucky, Phillip Brown was approaching the intersection on Mrs. Myles’ right, • and under the statute Brown had the right-of-way.
Immediately prior to the accident, Phillip Brown was driving a Ford Falcon automobile west on Frederick Street with Dennis Brantley seated on the left front fender. Frederick Street has sidewalks on both sides and is straight with the view being unobstructed for a considerable distance before its intersection with Kentucky. Phillip testified he was driving approximately 25 miles per hour; that he observed the Myles vehicle as it entered the intersection proceeding north on Kentucky. He said he applied his brakes but was unable to stop and the left front portion of his car struck the right side of the Myles vehicle. He said he first applied his brakes about 75 feet from the intersection but “let up” and then applied them again just prior to the impact. He testified young Brantley was thrown from the left front fender prior to the impact and his body was thrown into the Myles car.
Mrs. Myles testified she was unfamiliar with the intersection and stopped before entering Frederick, looked in both directions and proceeded slowly across. She said she did not see the vehicle approaching from her right until it was only a few feet away.
The trial judge relied heavily on the testimony of a disinterested witness who was standing in his yard near the intersection. This witness testified he saw Mrs. Myles stop before entering the intersection. He also said he saw the Brown car traveling west on Frederick and that no vehicles were parked on either side of that street for a distance of at least 75 feet east of the intersection.
Reviewing all of the evidence, we conclude that Brown was traveling at a reasonable rate of speed and that when he first observed the Myles vehicle he was unable, by the use of ordinary care, to avoid the accident. We also find Mrs. Myles was guilty of negligence in not making proper observation before entering the intersection. As heretofore noted, she testified she looked in both directions but we *722 find if she had made the proper observation to the right she would or should have seen the Brown vehicle approaching. Her excuse for not seeing the vehicle to her right was that cars were parked along the sides of the street. We do not find the evidence supports this contention. Mrs. Myles also said that when she first saw the Brown car it was veering to its left and she thought the driver was preparing to park on the left side of Frederick behind a parked car. This «statement by Mrs. Myles is inconsistent with a finding she made proper observation before entering the intersection. In his written opinion the trial judge said:
“The testimony seems to establish that the Myles vehicle preempted the uncontrolled intersection to such a point that the Brown vehicle should have relinquished the right of way to it. Regardless of the preemption issue and any negligence that might or might not be attributed to Mrs. Myles, it is the Court’s opinion that the driver of the Brown vehicle was negligent in allowing the Bran-tley boy to ride on the left front fender, which action obviously obstructed his view to such an extent that it cannot be presumed that Phillip Brown was exhibiting the proper lookout as required by the laws of the State of Louisiana.”
Thus we see the trial court did not find as a fact that Mrs. Myles had preempted the intersection. We find that she had not preempted the intersection. Preemption is another common-law doctrine which has found its way into our civil law system and, like most other such doctrines, has caused some confusion in our jurisprudence. However, it is so well entrenched we must give it proper consideration in this case. In passing upon liability in all tort cases it is well for our courts never to lose sight of the fact that the primary source of all tort liability in Louisiana is predicated upon Louisiana Civil Code Article 2315, which provides that,
“Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” (Emphasis ours)
In order to define fault, many statutes have been enacted by our lawmakers, including the state statute and municipal ordinance requiring the driver on the left to yield the right-of-way to the vehicle on the right at an uncontrolled intersection.
For a motorist entering an uncontrolled intersection to invoke the doctrine of preemption in order to absolve himself of fault, it is necessary that he show not only that his vehicle entered the intersection first, but that he first observed and ascertained he could reasonably anticipate he could traverse the crossing in safety if no other vehicle arrives at an unexpectedly excessive speed. Further, he must refrain from impeding traffic or creating an emergency to a motorist approaching from his right on the other street. Entry into the intersection just a fraction of a second ahead of the other vehicle does not create preemption. Bonvillian et al. v. Klein et al. (La.App. 4th Cir. 1963), 157 So.2d 298; Berry v. Festervan et al. (La.App.2d Cir. 1968), 215 So.2d 398; West v. Travelers Indemnity Company et al. (La.App. 4th Cir. 1969), 225 So.2d 139.
Under the facts we find Mrs. Myles had not made proper observation before entering the intersection and could not reasonably expect to make the crossing in safety without creating an emergency for the Brown vehicle; hence the doctrine of preemption may not be invoked by Mrs. Myles to show lack of fault on her part.
The real basis of the lower court’s decision was that young Brantley was guilty of contributory negligence which barred recovery for any damages resulting from his injuries. We find no basis under our law for this conclusion. Our jurisprudence is replete with decisions that a person is barred from recovery if his own negligence contributed to the accident causing the damages. With this principle in mind, let us examine all possible actions *723 by Dennis Brantley in order to ascertain if he did anything which contributed to the accident.
Counsel for appellees strenuously argues that because an ordinance of the City of Shreveport and a statute of the State of Louisiana make it unlawful for a driver to “allow” a person to ride on the fender of a car, this is negligence per se. While it is true the statute so provides, nevertheless in order to bar recovery by a person riding on the fender, it is necessary to show that the violation of the statute was a “cause” of the accident. On this point the jurisprudence is uniform and overwhelmingly contrary to the holding of the lower court.
The lower court cited and relied on Vaughn v. Cortez et al. (La.App.3d Cir. 1965), 180 So.2d 796. In that case the court held a plaintiff who rode on the hood of an automobile after he and the driver had been drinking alcoholic beverages most of the night, had assumed the risk of an injury resulting from a collision between the car upon which he was riding and another one. While there were some gratuitous statements made in the Cortez case the basis of barring recovery was assumption of risk because plaintiff knowingly exposed himself to risk by riding with a driver that he knew had been drinking.
The jurisprudence of Louisiana is that a person who is riding on the running board, fender, or in any other precarious position assumes only such risks as might cause him injury while the driver is operating the vehicle in a reasonable and prudent manner. He does not assume the risk of any negligent operation on the part of his own driver or on the part of the driver of another vehicle, unless, as in Vaughn, he assumes the risk of riding with a driver whom he knows to be drunk, incapable or careless and reckless. In other words, the purpose of the statute prohibiting a person to ride on the fender of a car is to protect him from the hazards usually incident to such a precarious position, such as being thrown from the vehicle by the automobile hitting a hole in the road or traveling on a road with sharp curves, etc. See Bordelon v. Great American Indemnity Company et al. (La.App.3d Cir. 1960), 124 So.2d 634, where a 16-year-old boy was allowed to recover against the employer of the negligent driver of the vehicle upon which he was riding. In Fontenot v. American Employers Insurance Company (La.App.3d Cir. 1965), 176 So.2d 760, a person who was riding on the bed of a truck beyond the cab was allowed to recover against the insurer of the negligent truck driver.
In Keowen et al. v. Amite Sand & Gravel Co. et al. (La.App.1st Cir. 1941), 4 So.2d 79, the parents of a 19-year-old boy who was riding on the fender of a car were allowed to recover where the accident was caused by the negligence of another driver.
Counsel for appellees strenuously contend that young Brantley’s injuries were obviously caused by his position on the fender because the impact between the two cars was very slight; in fact, the evidence seems to reflect that the boy was thrown from the Brown vehicle prior to the impact. On this point the lower court said:
“In the instant case had the Brantley boy not been riding on the left front fender of the Brown vehicle the Court feels the probability of this accident occurring would have been small and the resulting injuries to him would have been non-existent. The evidence indicated that the impact between these two vehicles was very slight.”
We disagree with appellees’ contention and the above finding of the lower court. To say that Brantley would not have been injured had he been inside the car rather than on the fender is purely speculative and not based on any evidence found in the record.
*724 In Salone v. Shreveport Rys. Co. (La.App.2d Cir. 1949), 41 So.2d 240, an 18-year-old boy was killed while riding on the rear fender of an automobile in violation of a municipal ordinance. There the court said:
“There is no evidence in the record which indicates that the position of the decedent, Ardis Salone, on the running board of the car driven by Petteway was a contributing cause in any degree whatsoever to the happening of the accident. It is well established that the negligent act of a person riding on a running board is not sufficient to preclude recovery. Robinson v. Miller, La.App., 177 So. 440. This is true even in cases where the probabilities are that plaintiff would not have been injured had he been inside the car. Stout v. Lewis, 11 La.App. 503, 123 So. 346.”
By way of summary on the issue of fault, we find Phillip Brown was free of negligence; that Helen J. Myles was guilty of negligence which was the sole proximate cause of the accident and resulting damages made the basis of this suit; that the plea of contributory negligence or assumption of risk against Dennis Brantley is without basis and should have been overruled.
In determining the amount of damages to which plaintiff is entitled, we have reviewed the testimony of Dr. Warren D. Long, Jr., who first saw Dennis in the emergency room of the Willis-Knighton Hospital on July 29, 1969, shortly after the accident.
Dr. Long testified that when he first examined Dennis he found he had a compound fracture of the right side of his head; that he was not unconscious but was obtund (dull); his vital signs were stable and he had lacerations of the elbow and under his left eye. Further, he had several teeth knocked out (later determined to be four) and a facial fracture. Since the wound was compound, indicating fracture of his skull, there was some question of whether the covering of the brain was lacerated and he was taken to surgery and there operated upon by Dr. Long. The procedures were described as a debridement of the wound; removal of the fracture elements that were comminuted; a small dural laceration of the covering of the brain was opened and no hematoma was found; this opening was closed, irrigated, and all wounds were sutured. Lip and gum wounds were attended to by Dr. Worley who also removed the loose teeth.
Following the above operative procedures, Dennis suffered a seizure in the hospital which affected his arm on the side opposing the skull fracture. Such seizures were described as transitory, i.e., they would come back. An electroence-phalo-gram was made and found to be within normal limits; however, Dr. Long testified that a normal EEG is not inconsistent with the type seizure which Dennis experienced.
Apparently Dennis was hospitalized from July 29 until discharged August 2, 1969. He continued under the care of Dr. Long who examined him August 11, 1969 and removed the sutures from the wound. He testified that at that time there were no signs of infection and the patient was placed on anti-convulsant medication (Dilantin). The surgeon testified further there was no way to tell how long Dennis would have to be on the drug which he was taking at the time of the trial April 1, 1971. He stated, “He will be tapered over the next year or year and a half or two.” After that period, if the electroencephalograms still show no seizure activity and if the boy functions well he would be given a trial off the medication. However, he testified if Dennis continued to have seizure activity he would have to be on the anti-convulsant medication indefinitely. Dr. Long planned to examine Dennis at least every six months but interim medical attention could be furnished by his family physician. Finally, he stated he would not allow Dennis to engage in any contact *725 sport and that it was possible that either he or some other physician would have to check on Dennis’ condition for the rest of his life. Additionally, he testified the teeth problem is going to be permanent, as is the scar focus over his cortex, and if the defect is or remains large enough the surgeon stated “we may anticipate plating the defect.”
Insofar as pain connected with the injury, Dr. Long testified the wound would cause pain. Dennis testified he suffered from headaches whenever he got out in the sun and that prior to his injury he played football regularly as well as other contact sports which he can no longer do.
Dr. Long reiterated that he could make no positive prediction as to the future course of Dennis’ seizures other than his statements already made. Therefore, we are confronted with the problem of determining whether Dennis will have a future disability more extensive than he presently has, or if he will be able to live a comparatively normal existence.
It should be pointed out that in fixing this award there is no evidence in the record concerning Mrs. Myles’ ability to pay. Additionally, the public liability insurance policy introduced into evidence reflects a limit of $5000 coverage for personal injuries suffered by one person. Undoubtedly these facts influenced the plaintiff in not producing more evidence to show the full extent and severity of Dennis’ injuries and disability. However, based on the evidence before us, we find $25,000 is a conservative award for Dennis’ personal injuries.
The medical and hospital bills introduced into evidence without objection totaled $1,852.35, for which we find Mr. Brantley is entitled to be reimbursed. Additionally, a letter from the dentist, Dr. O. K. Bailey, advised plaintiff that Dennis needs a permanent bridge to replace the missing teeth, which would cost $440.00. Since this will be needed while the boy is still a minor, his father will of necessity have to bear this expense. The cost of the anti-convulsant drug for three years from the date of trial is estimated at $108.00. For these future dental expenses and medicine, we find Mr. Brantley is entitled to recover $548.00.
For the reasons assigned, judgment of the lower court is reversed, annulled and set aside and it is now ordered, adjudged and decreed that there be judgment in soli-do against defendants, Traders & General Insurance Company and Helen H. Myles, and in favor of Henry J. Brantley, individually, in the amount of $2,400.35, and in favor of Henry J. Brantley on behalf of his minor son, Dennis, in the amount of $25,000.00, with legal interest from judicial demand until paid, limited insofar as the defendant insurer is concerned to its policy limits.
The demands against Gracie M. Adams are rejected.
Defendants Traders & General Insurance Company and Helen J. Myles are assessed with all costs, including the expert witness fee of Dr. Long, which is hereby fixed at $75.00.
HEARD, J., dissents with written reasons.