KLIEBERT, Judge.
Ryan P. Guidroz and Vallie Covington Guidroz,[1] plaintiffs herein, brought suit against the Louisiana State Department of Transportation and Development (hereafter DOTD) for damages sustained in an automobile accident which occurred on Highway LA 608 (Bayou Gauche Road) in St. Charles Parish on April 6, 1977 at about 10:00 P.M. The 1977 Pontiac Grand Prix owned and being operated by Ryan Guidroz with Vallie Covington occupying the right front seat was traveling in a northerly direction from Bayou Gauche towards Highway 90 in Par-adis. At the point of the accident, the road follows along a canal until it turns sharply to the left over a bridge and then once over the bridge turns sharply to the right. There is uneontradicted testimony by DOTD’s expert that the sharp curve to the left where the accident occurred was a 68° angle as shown on the 1935 plans for the highway. The vehicle being operated by Guidroz failed to negotiate the curve, went off the roadway, became airborne, overturned and landed front bumper down in a ditch.
Ryan P. Guidroz sustained a fractured nose and serious contusions. His passenger, Vallie Covington, had extensive injuries. She suffered from a compression fracture of the tenth thoracic vertebrae, blunt trauma to the abdomen, retroperitoneal hemato-ma and severe right renal contusion.
In his reasons - for judgment the trial judge found Guidroz contributorily negligent and made the following findings as to the liability of DOTD:
“In the opinion of the Court, the State of Louisiana, through the Louisiana State Department of Transportation and Development, was negligent by its failure to adequately mark the characteristics of the state highway and such negligence was the proximate cause of the accident made on the basis of this lawsuit.
The expert witnesses produced by Defendant frequently referred to and con- *662 suited with regulations compiled by the Louisiana Department of Transportation and Development under the Provisions of Act 310 of 1962; Act 182 of 1978 as well as R.S. 32:41-2, authorizing that Department to manufacture and post, as well as design, all manner of highway signs and this Court finds that Defendant was in violation of its own regulations in that it failed to properly maintain sign type Wl-6 (page 2C05); and W5-2 (page 2A-16).”
Subsequently, after additional medical evidence was submitted, he made the following findings as to the injuries sustained by Ms. Covington:
“The evidence in this case discloses areas of injury to the plaintiff, two of which were responsible for the massive amount of special damages for medical treatment and hospitalization, namely:
(a) Puncture injuries to the abdominal wall causing internal injury;
(b) Fractured vertebrae (T-10) which X-Rays disclosed was crushed and which necessitated a Baker Brace so as to prevent spinal cord injury.
The Plaintiff’s post-hospitalization care reflects that the attending physicians expected continued pain for several months as Seconal was prescribed (as needed) by Dr. Winters so as to allow minimal movement. While in the hospital, she was required to lay on a flat bed with minimal movement. Despite the several areas of serious injury and predictable severe pain, the Plaintiff had a tendency to minimize her injury in the witness stand and, at most, testified that she was seldom bothered by the injuries and for the most part, free of symptoms. For this reason, the Court respects her complaints for the first 12 months following the accident as she has a tendency to minimize them at the time of the trial.
Dr. Brinkman performed a laparatormy on the Plaintiff, which is noted as abdominal surgery, apparently from her stomach wall striking a sharp object inside the car such as a gear shift. Although the skin was not broken, it was noted as a puncture wound in that something damaged the internal organs of the abdomen.”
Based on those findings he rendered judgment in favor of Ms. Covington and against DOTD for $10,000.00 as special damages and $50,000.00 in general damages.
The DOTD appeals, contending the trial court erred in finding the State negligent and awarded excessive damages to Ms. Cov-ington. The plaintiff Guidroz appealed, contending the court erred in finding him contributorily negligent. Ms. Covington answered the appeal asking for an increase in damages. For the reasons which follow, we affirm the trial judge.
The State Trooper who investigated the accident interviewed both plaintiffs in the hospital. Trooper Hart testified as follows:
“I estimated the speed at 70 plus. It was not my estimation but I asked at the hospital of Mr. Guidroz how fast he was going and he advised 70 miles or higher.”
Dr. Olin Dart testified as an expert in the field of accident reconstruction and highway design and traffic engineering. Dr. Dart found that the vehicle was being operated at a high rate of speed. He estimated the speed to be between 55 and 65 MPH and that an estimation of 70 MPH would not be unreasonable.
Mr. Guidroz testified to the following:
Q. Did you have any trouble going through the curves when you went down that evening?
A. I had to slow down when I seen the sign — the only sign they had was is the one on the turn, itself — and I slowed down to at least fifteen miles an hour to make the turn.
s{: * * * * *
Q. Fifteen was the safest that you could go through that curve.
A. Yes.
He further testified:
A. I knew it was a bad turn, you could see it.
Q. Did you comment on this to your wife (Ms. Covington) at the time that you went through it?
*663 A. Yes, I did.
* sts * * * *
Q. Coming back to the night of the accident, and coming back home that evening, toward Marrero — you were driving down LA 306 back to this sectioned area where the accident took place — -You remembered the curve coming on that trip down— were you looking for the curve on the way back?
A. Yes, we were looking for some caution signs or some kind of signs. I was driving under the speed limit. I was driving forty-five (45) or less or maybe a mile or two over that. The speed limit is 50 miles from Highway 90 all the way back until you get to the bayou.
Although there was contradictory evidence as to the existence or non-existence of a “black zig-zag arrow on yellow background” sign along the side of the road at some point prior to reaching the curve, virtually every witness who was at the scene shortly before or after the accident testified there was no sign showing the change in road direction or other warning in place at the sharp point of the curve at the time they visited the scene of the accident.
The trial judge’s finding of fact are entitled to great weight and are not to be set aside unless he committed manifest error. Canter v. Koehring, 283 So.2d 716 (La.1973). There is ample evidence in this record to support the trial judge’s findings. Therefore, we cannot say he committed manifest error.
The State Trooper testified Ms. Coving-ton informed him that on the night of the accident she and Mr. Guidroz were arguing and the car went off the road because they were going too fast. Ms. Covington, however, denied she made such a statement. There is no other evidence which might be considered as indicative of negligence on the part of Ms. Covington. Therefore, we also conclude the trial judge was correct in finding Ms. Covington free of negligence.
After carefully reviewing the medical evidence, we agree with the trial judge’s evaluation of the injuries sustained by Ms. Covington. The trial judge has wide discretion in determining the amount of damages. His findings are entitled to great weight and will not be disturbed unless there is a clear abuse of his discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). We cannot say he abused his discretion in awarding $10,000.00 in specials and $50,-000.00 in general damages for the injuries sustained by Ms. Covington.
Accordingly, the judgment of the trial court is affirmed. All costs of appeal to be borne by the defendant-appellant.
AFFIRMED.

. Plaintiffs were dating at the time of the accident and were married shortly thereafter.