CHEHARDY, Judge.
These two cases were consolidated for trial in the district court and for argument here. They arise out of a one-car automobile accident which occurred on U. S. Highway 90 near Bridge City in the Parish of Jefferson. Charles M. Guidry, the driver, was killed and his guest passenger, Charles E. Mormon, was injured. Plaintiffs in Suit No. 5-184 of our docket are decedent’s wife and his son, who filed a wrongful death action, and plaintiff in Suit No. 5-185 is the passenger, Charles E. Mormon. Named defendant in both suits is the Louisiana Department of Transportation and Development, also known as the Department of Highways. Mormon also named as a defendant Allstate Insurance Company, the automobile liability insurer of the decedent, under the Louisiana Direct Action Statute.
An intervention was filed in the Guidry suit by U. S. Fire Insurance Company, the workmen’s compensation insurer of dece *597 dent’s employer, for compensation and burial expenses paid to Mrs. Guidry.[1]
Following trial a single judgment was rendered in these consolidated suits awarding Mrs. Guidry $308,500.00, Charles Gui-dry, Jr., $50,000.00 and Charles Mormon $30,000.00 against The Louisiana Department of Transportation and Development. Mormon’s claim against Allstate was dismissed, and there was judgment in favor of the intervenor U. S. Fire Insurance Company in the sum of $17,935.00 in the Guidry suit.
The Guidrys have appealed and the Department of Transportation and Development has appealed. The intervenor has answered both appeals, and Mormon has answered the Guidry appeal.
The basic facts are that Guidry and his co-worker Mormon were travelling in a company-owned vehicle on Highway 90 near Bridge City when an automobile cut in front of them, causing decedent to swerve to avoid the accident. In doing so his vehicle went off the road onto a rut on the shell shoulder. The vehicle went out of control as Guidry brought it back onto the roadway, slid sideways across the highway and flipped over several times. Guidry died and his passenger was injured.
NEGLIGENCE OF THE DEPARTMENT
The appeal of the Department is based upon their lack of negligence, or alternatively the contributory negligence of decedent.
As stated by our Supreme Court in the case of Sinitiere v. Lavergne, La., 391 So.2d 821 (1980), the Department is not the guarantor of the safety of travelers, but owes a duty to them to keep the highways and its shoulders reasonably safe for non-negligent motorists. Liability based upon negligence is imposed when the Department is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time.[2]
Since road shoulders are only designed for temporary use, when a motorist finds himself off of the roadway, the Department’s duty of care is generally discharged at a level of construction and maintenance less than that required for the primary road surface.
However, an implicit necessity for the functional use of a shoulder is a connection between the roadway and shoulder that allows for safe gradual movement from one to the other. A motorist has a right to assume that a highway shoulder, the function of which is to accommodate motor vehicles intentionally or unintentionally driven thereon, is maintained in a reasonably safe condition. Rue v. State, Dept. of Highways, La., 372 So.2d 1197 (1979).
Thus the decedent and his guest passenger are within the ambit of the Department’s duty to maintain reasonably safe shoulders. A review of the record fully supports the trial court conclusion that the Department breached that duty.
According to the testimony of the State Trooper who arrived on the scene shortly after the accident, the trench in the shoulder in the area of the accident was between 8-10 inches deep, 6-9 inches wide and at least 100 feet long. The rut had been there at least three months because he had notified his troop of the existence of this hazardous area and the information had been relayed to the Department. The witness *598 had, in fact, requested a road crew of the Department working in the immediate area to fix the rut before this accident occurred, but they had not done so. The officer was also aware of other accidents at this location.
A parish maintenance supervisor testified he is a resident of the Westbank and very familiar with the accident area. He described his lack of proper equipment and necessary personnel to adequately perform the duty of maintaining the roadway, and further stated that a 5-inch rut would be an emergency situation requiring immediate repairs, and that the accident scene required more than regular maintenance because it is heavily travelled. The trial court found the Guidry vehicle went out of control only after encountering the rut adjacent to the roadway.
The department and plaintiff Mormon claim decedent was negligent. It is suggested that Guidry was intoxicated and that his vehicle ran onto the shoulder because he was looking at the young woman in the other car instead of watching the roadway. Mormon testified that about 30 minutes before the accident they had stopped to pick up something to drink. They bought four 8-ounce ponies of light beer, and each one of them drank two. Mormon also stated they both looked at the young lady in the car that cut in front of them, but he did not know if decedent was observing her at the time their vehicle veered off the highway.
We are more impressed with the testimony of an independent witness, a man who was travelling several car lengths behind decedent’s vehicle for some period of time, who observed the other automobile cut abruptly in front of Guidry causing him to swerve onto the shoulder in an effort to avoid an accident. The witness stopped to give assistance to the decedent and Mormon. He gave no evidence that either man was intoxicated, nor did the investigating State Trooper. The record simply does not support the allegations that Guidry was intoxicated or that he was inattentive to his driving duties, nor does the autopsy report indicate an intoxicated condition. He was confronted by a sudden emergency and his effort to avoid an accident by driving onto the shoulder does not constitute negligence on his part. There is no evidence that he was travelling at an excessive rate of speed.
DAMAGES
The Guidrys request an increase in their awards of $50,000.00 each for loss of love and affection, and Mrs. Guidry asks for an increase in the award for loss of support.
Mrs. Guidry did not testify. It was stipulated that at the time of her husband’s death they were living together and loved each other as a married couple.
Her son testified his mother handled the family finances. His father turned over his pay check to her and she purchased clothing for him and his father. The father enjoyed fishing with his wife and his son. The son testified briefly.
Mr. Charles Mayo, general sales manager of decedent’s employer who was a resident of Texas, testified by deposition that decedent and his wife had a very close relationship. He observed them to be a very happy couple and noted that while on a trip to Hawaii with an employee group Guidry had foregone a deep sea fishing trip with the men to take his wife on a tour of one of the other islands. He noted that Mrs. Guidry frequently accompanied her husband on sales trips.
The law on the issue of the appellate review of damages is contained in La.Const. of 1974, Art. 5, § 10(B) and C.C. art. 1934(3). In interpreting Article 1934(3) our Supreme Court has held in Coco v. Winston Industries, Inc., La., 341 So.2d 332 (1976), at page 335:
“ * * * [Bjefore a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. * * * ”
A reviewing court might well disagree with the amount of the award, but it is not entitled to substitute its opinion for that of the trier of fact. Spiders v. Mont *599 gomery Ward & Company, Inc., La., 294 So.2d 803 (1974); McElroy v. Vest, 407 So.2d 25 (La.App. 3d Cir. 1981). An abuse of the trial court discretion must be clearly demonstrated before an appellate court will tamper with an award of general damages. Anderson v. Welding Testing Laboratory, Inc., La., 304 So.2d 351 (1974); Covington v. Department of Transp., Etc., 411 So.2d 660 (La.App. 4th Cir. 1982).
Using these guidelines, we cannot say the trial court abused the wide discretion granted it under C.C. art. 1934(3) and we decline to increase the awards for loss of love and affection.
THE AWARD FOR LOSS OF SUPPORT
Mrs. Guidry was awarded $308,500.00. Of this amount $258,500.00 was attributable to loss of support. We are asked to increase this award.
Mr. Guidry was 44 years old at the time of the accident. He had been employed for a little more than one year as a salesman for an oilfield services company. He was an excellent salesman and well regarded by his company. He was highly motivated, very ambitious, aggressive and well liked by all. His first year earnings totaled $20,-000.00 income from commissions, bonuses, prizes and trips. He had such fringe benefits as pension, profit sharing plan, automobile allowance and vacation trips for himself and his wife. The sales manager projected that within five or six years Gui-dry would have been earning $40,000.00 in commissions alone.
Dr. Melville Wolfson, an economist, gave expert testimony in the field of economic loss. He stated plaintiff had a life expectancy of 26 years from the date of trial, and a work life expectancy of 16 years. Based upon an average annual income of $20,-000.00, Wolfson concluded the lost income to date of trial amounted to $66,000.00.
In connection with the loss of future support Wolfson offered numerous calculations regarding loss of future income ranging from $228,100.00 to $550,000.00. Using an annual income of $20,000.00 discounted at 7V2%, allowing a 30% deduction for consumption (i.e. personal spending), and allowing a 15% increase for fringe benefits, he arrived at his lowest figure of $228,-100.00.
Proceeding to base other calculations on $20,000.00 income for five years, increased thereafter to $40,000.00, and using the same deductions and increases outlined above, the loss would amount to $379,000.00.
Asked to make further calculations assuming that fringe benefits and consumption offset each other and using a T/2% discount rate he stated the loss would amount to $470,000.00; at a 5% discount rate the loss would amount to $550,000.00.
It is clear the trial court award was based upon the lesser of the figures. It is appellant’s position that her award should have been based upon the higher calculations. She is of the opinion that fringe benefits should offset consumption, which would increase her award to $440,000.00 or $550,-000.00 (based upon a 7V2% or 5% discount), or that her award should be based upon that calculation which increases the $20,-000.00 yearly earnings to $40,000.00 after five years.
Although Wolfson was the only expert to testify, he was cross-examined extensively. He admitted that he had no basic data available to determine decedent’s consumption factor and he had predicated his 30% factor solely on the basis of an academic study. He agreed that such a figure would vary considerably according to the individual’s lifestyle, how much money he spent on himself and his wife, whether or not he invested his money or saved it, etc. He knew nothing of decedent’s habits in these matters.
Decedent worked on a commission basis and had only a one-year work history in his new profession. Therefore we find it was proper for the trial court to base its award on his known earnings of $20,000.00 rather than to speculate on what those earnings might be five years in the future.
Considering all of the evidence, in our view the trial court committed no manifest error in this award.
*600 INTERVENOR’S CLAIM
U. S. Fire Insurance Company has answered the appeals of both the Guidrys and the Department. It prays the judgment be amended to increase its award from the sum of $17,935.00 to any and all amounts paid by U. S. Fire Insurance Company to Corinne Guidry on the basis of $95.00 per week, and costs incurred in both courts.
We agree with this contention. The intervenor is entitled to be reimbursed for all workmen’s compensation paid and that which it is obligated to pay in the sum of $95.00 weekly. We will amend the judgment accordingly.
THE PASSENGER’S ANSWER TO THE APPEAL
Charles Mormon, the guest passenger, obtained judgment in the sum of $30,000.00 against the Louisiana Department of Highways and his demand against Allstate (decedent’s insurer) was dismissed.
He answered the appeal of Mrs. Guidry praying for an increase in quantum to compensate him for impaired wage earning capacity, and for a finding of negligence on the part of decedent and Allstate.
First we consider the effect of Mormon’s answer to the Guidry appeal. The Guidrys were not named defendants in the Mormon suit and no judgment was rendered against them. His answer to the Guidry appeal does not have the effect of bringing before this court Allstate Insurance Company for a review of that part of the judgment which dismissed Mormon’s suit as to that defendant.[3]
Nor does Mormon’s answer to the Guidry appeal suffice to bring before us his request for an increase in quantum. We could render no judgment against the Guidrys in a suit in which they were not named defendants, nor could we grant an increase in Mormon’s award against the Department, because he has neither appealed nor answered its appeal.
Our settled law is that set forth in C.C.P. art. 2133:
“An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded. * * * The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer. * * * ft
See Barrois v. Noto, 215 So.2d 676 (La.App. 4th Cir. 1968).
For the reasons assigned the judgment appealed from is amended to increase the award to the intervenor U. S. Fire Insurance Company for reimbursement by preference for any amounts paid to Mrs. Guidry after October 17, 1980 for workmen’s compensation benefits. Costs of the intervenor in both courts are to be paid by Mrs. Corinne Guidry. In all other respects the judgment appealed from is affirmed.
AMENDED AND AFFIRMED.

. Panther Chemical Company, the employer of Guidry and Mormon, initially intervened in the Guidry suit alleging it had been sued in a separate action by Mrs. Guidry for compensation benefits. It denied decedent was in the scope of his employment at the time of the accident, but prayed alternatively that if found liable, judgment be rendered for payment by preference out of any judgment awarded to Mrs. Guidry for reimbursement of compensation paid.
Judgment was rendered against Panther in the compensation suit in the sum of $95.00 per week, plus $1,500.00 funeral expenses. A total of $17,935.00, representing the sum due through October 17, 1980 was paid by Panther’s compensation insurer, U. S. Fire Insurance Company. Subsequent thereto U. S. Fire filed its intervention in the Guidry suit.

. Because of the facts of this case we need not decide the applicability of C.C. art. 2317.

. We have already decided the decedent Guidry was not negligent in connection with the appeal of the Louisiana Department of Transportation and Development.